## UNITED STATES of America

v.

## John W. HINCKLEY, Jr.

### Crim. No. 81–306.

United States District Court, District of Columbia.

Jan. 8, 1982.

Vincent J. Fuller, Williams & Connolly, Washington, D. C., for defendant.

Roger Adelman, Asst. U. S. Atty., Washington, D. C., for plaintiff.

## AMENDED STATEMENT OF REASONS

BARRINGTON D. PARKER, District Judge:

On November 17, 1981, this Court entered an opinion, 525 F.Supp. 1342, and order suppressing statements obtained from the defendant John W. Hinckley, Jr. by federal law enforcement officers during a 30 minute interrogation on March 30, 1981, the day of his arrest. Suppressed at the same time were certain documents seized from the defendant's cell by personnel of the Butner Correctional Facility during an alleged search for contraband on July 24, 1981.

The suppression of Hinckley's responses solicited during the half-hour FBI interrogation was founded on a line of Supreme Court decisions barring the prosecution from making its case with statements of an accused held in custody prior to his having waived, or effectively having waived, counsel. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1968); *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Suppression of the documents was supported by Fourth Amendment considerations. *Bell v. Wolfish* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Bonner v. Coughlin*, 517 F.2d 1311 (7th Cir. 1975), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978).

The November 17th ruling stopped short of addressing the implications of *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) and *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), where the Supreme Court allowed the prosecution to make use of unconstitutionally obtained evidence for purposes of impeachment. Also left unresolved was the question of the admissibility and the use by the prosecution of the suppressed statements and documents as a rebuttal to Hinckley's insanity defense. Indeed, the government prosecutors had announced previously that they did not expect or consider it appropriate to use the questioned evidence in their case-in-chief to prove guilt but only for rebuttal purposes on the issue of responsibility in view of the defendant's previously announced insanity defense. Counsel were invited to submit post-hearing

memoranda addressing and focusing on the prosecution's use of the evidence determined to have been unlawfully secured and seized in light of *Harris* and *Hass.*

Both parties responded. In addition, the government filed a motion for clarification and reconsideration of the order suppressing the statements and the documents. The motion was heard on December 14, 1981, and the Court reserved ruling in order to review the authorities and arguments addressed by counsel. On December 16, 1981, before the Court had opportunity to rule, the government appealed from the November 17th opinion and order. The motion for reconsideration was then denied and the Court indicated that a statement of reasons would follow. This memorandum supplies both a clarification of the November 17th ruling and the reasons for the Court's denial of the government's motion for reconsideration.

### A.

First as to the clarification. One concern of the government is the scope of the ruling, i.e., whether the court's opinion and order related to *all* March 30th declarations of the defendant or only to those statements secured during the half-hour period of interrogation. It is only those statements secured from Hinckley by the FBI agents at the Washington Field Office between 7:00 and 7:30 p. m. that are suppressed. It also follows that the Court's ruling precludes any demeanor testimony by the agents concerning the manner in which Hinckley responded to their questions, as well as their perception of his responses. Likewise, this applies as to any testimony of government psychiatrists who may have later interviewed those agents and relied upon their accounts, impressions and reactions as to what occurred in arriving at their opinions and conclusions on the question of the defendant's responsibility.

The Court adopts the same position as to the documents seized by the Butner officials from the defendant's cell while he was incarcerated as a pretrial detainee. The ruling was intended to and does bar the prosecution from utilizing in any manner, by either the Butner personnel or the prosecution expert witnesses, the suppressed documents.

### B.

Turning now to the other problems presented. *Harris, Hass,* and, more recently, *United States v. Havens,* 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980), permit the admission of suppressed evidence and provide an exception to the exclusionary rule in a narrowly defined set of circumstances. A central thread running through the cases is a recognition that a defendant's credibility is a proper target of attack through his prior inconsistent statements and, thus, may be impeached even by evidence impermissibly obtained by law enforcement officers. The majority opinion of Justice White in *Havens* makes the point:

> In both [*Harris* and *Hass*] the Court stressed the importance of arriving at the truth in criminal trials, as well as the defendant's obligation to speak the truth in response to proper questions. We rejected the notion that the defendant's constitutional shield against having illegally seized evidence used against him could be "perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances.... Both cases also held that the deterrent function of the rules excluding unconstitutionally obtained evidence is sufficiently served by denying its use to the government on its direct case.
>
> *        *        *        *        *        *
>
> It is essential, therefore, to the proper functioning of the adversary system that, when a defendant takes the stand, the government be permitted proper and effective cross-examination in an attempt to elicit the truth. The defendant's obligation to testify truthfully is fully binding on him when he is cross-examined. His privilege against self-incrimination does not shield him from proper questioning.... He would unquestionably be

subject to a perjury prosecution if he knowingly lies on cross-examination.

446 U.S. at 626–27, 100 S.Ct. at 1916–17 (citations omitted).

The prosecution argues that the Court should limit its November 17th ruling and that the suppression of Hinckley's March 30th statements and the July 24th documents should be restricted and applicable to their burden only as related to the crimes charged in the indictment and their case-in-chief. The prosecution then argues that it should be permitted to take advantage of Hinckley's statements and documents to *rebut* and counter any expert testimony and efforts mounted by his counsel on the issue of their client's sanity and mental condition and criminal responsibility.

To support this argument, the government relies upon decisions from this Circuit granting latitude to and authorizing the trial court to pursue before the jury an inquiry into facts and evidence which show the mental state of the defendant. Specifically, in the context of this proceeding, it claims that precedent and logic grant it the right to use both Hinckley's responses and answers to the FBI interrogation on the night of March 30 and his papers seized several months later at the Butner facility. Such testimony and evidence, in the view of the prosecution, afford basic information and are valuable pieces of evidence, serving as indices of Hinckley's mental condition which the jury should consider in deciding the issue of his legal responsibility. In sum, the government contends that even if the evidence was illegally obtained, it may nevertheless be used to rebut a defense of insanity. Otherwise, the prosecution contends that it would be laced in a legal straightjacket and denied the opportunity to present a complete picture of the relevant facts. This, it urges, should be the position of the Court, whether the defendant himself testifies or whether his expert

witnesses comment and rely upon such evidence.

The *Harris, Hass* and *Havens* trilogy limited the circumstances in which exceptions are granted to the exclusionary rule. In *Harris,* for example, the Court, in upholding the admission of unconstitutionally obtained statements to impeach a defendant's direct testimony when he takes the stand, reasoned that the deterrence policy is given full effect by denying admission of the statement during the prosecutor's case-in-chief. In *Hass,* the Court extended *Harris* to include the admission of statements attacking a defendant's credibility in spite of the fact that the information was obtained by law enforcement officials who ignored defendant's assertion of his right to counsel. *Havens* provided a broader application in that the prosecution was allowed to take advantage of suppressed statements to impeach a defendant whose contradictory testimony on cross-examination was reasonably suggested by and within the scope of his direct examination.

It is the view of this Court, however, that the three cases are distinguishable from the situation presented in this proceeding. Although the prosecution claims to the contrary, the *Harris* trilogy simply does not warrant a conclusion or inference that the unlawfully obtained and suppressed evidence or the fruits thereof can be utilized after the prosecution concludes its case-in-chief. Admission of the evidence in the three cases was conditional upon a showing of its utility for purposes of impeaching the defendant's testimony.[1] Lacking such a showing, the government may not introduce testimony or evidence relating to the improper interrogation or seized documents.

The government also relies upon a recent decision, *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). There, during the penalty phase of a capital prose-

---

1. Moreover, the Court is unwilling, absent compelling authority, to adopt a proxy testimony theory advanced by the government—namely, that even if the defendant himself does not testify, testimony by his expert witness opens the door to use by the government of the sup-

pressed evidence. Of course, if the defendant's expert witness opens the door by basing his conclusions as to the defendant's mental condition, then the government may rely on that evidence for rebuttal purposes. *See United States v. Julian,* 450 F.2d 575 (10th Cir. 1971).

cution, the government introduced the testimony of a psychiatrist who conducted a pretrial examination of the defendant to determine his future dangerousness. No *Miranda* warnings were provided, and although the defendant had retained counsel, he was denied the assistance of his attorney in deciding whether to submit to the psychiatric examination. The Court upheld the lower federal court's issuance of a writ of habeas corpus based on violation of the defendant's Fifth and Sixth Amendment rights. In so doing, the Court did not, contrary to the assertions of the prosecution in this case, provide a blanket exception from its ruling for cases in which a defendant, rather than the prosecution, seeks to introduce psychiatric evidence. Unlike the situation in *Estelle*, the government in the case at bar seeks to introduce psychiatric testimony derived through exchanges with agents who questioned the defendant even *before* sanity was placed in issue.

Two appellate decisions which the prosecution claims are most persuasive, *Jacks v. Duckworth*, 651 F.2d 480 (7th Cir. 1981) and *United States v. Trujillo*, 578 F.2d 285 (10th Cir.), *cert. denied*, 439 U.S. 858, 99 S.Ct. 175, 58 L.Ed.2d 166 (1978), offer little comfort upon close reading. *Jacks* was an appeal from denial of a habeas corpus petition under 28 U.S.C. § 2254. The petitioner claimed an insanity defense to a homicide indictment. The jury was allowed to hear telephone conversations between Jacks and his mother which were illegally recorded while petitioner was in custody. The two testified on direct examination; on cross-examination, where their credibility was impeached, the intercepted testimony was admitted by the trial court on the issue of the defendant's mental condition. However, the appellate court took pains to note that "there was no objection to . . . letting the jury consider it as to petitioner's sanity." 651 F.2d at 484. More importantly, the appellate court recognized that it was limited to a review of constitutional issues in a state criminal trial when presented in a section 2254 habeas proceeding. Finally, much of the Court's discussion on this issue appears to be no more than dicta.

In *Trujillo*, the defendant elected not to testify in a trial involving federal firearm violations. The sole issue was one of insanity. Even though defendant had requested counsel and was read his rights, the arresting agent secured answers to personal identification questions. The defendant did not testify but the trial court permitted testimony which showed the defendant's understanding and awareness at the time of arrest and determined that it was proper for use in assessing the sanity issue. No pretrial suppression motion was filed and the trial court relied upon Rule 403, Federal Rules of Evidence in allowing the agent's testimony. The important point to be noted is that no *Miranda* motion was filed, the evidence was never suppressed and no impeachment attempt was ever presented by the prosecution. While the defendant moved for a mistrial, the court ruled that under Rule 403 there was minimal prejudice and substantial probative value in the agent's testimony. One is hard pressed to recognize how this case is persuasive or controlling.

As to the issue of attenuation and the admissibility of the government's expert testimony, the prosecution relies upon *United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1977) and *Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974). The two cases focus on the admissibility of testimony of government witnesses whose identities were obtained through police conduct in violation of the Fourth Amendment. In *Ceccolini* the Court refused to bar testimony of a witness identified through an unconstitutional search. *Tucker* involved incriminating testimony from a witness identified by the defendant during an improper police interrogation. Employing a balancing test, the Supreme Court determined that the exclusionary rule should not apply since the witness and his testimony were sufficiently removed from the police misconduct that application of the rule would provide minimal deterrent value. Moreover, the Court recognized that the attenuation enhanced the reliability of the testimony of the

government witnesses. *Ceccolini* and *Tucker* stand in contrast to this case since here the FBI agents and prosecution witnesses would testify directly about the defendant's statements and demeanor during the unlawful interrogation. While the testimonial evidence in those cases was sufficiently attenuated from the misconduct to ensure its trustworthiness, the testimony which the prosecution seeks to present here is inextricably intertwined with the very evidence which was unconstitutionally obtained.

### C.

There can be no dispute that a defendant should be unable to take advantage of suppressed evidence to foist perjured, misleading or equivocal claims. And it should be recognized that a criminal prosecution is more than a game to be played by either the prosecution or the defense. But to allow the prosecution to employ suppressed statements and documents in the manner here suggested would go far beyond any ruling in which an appellate court has allowed such testimony and evidence to support the opinions and conclusions of an expert witness to prove a defendant's responsibility when an insanity issue is presented. In this proceeding, *Miranda* and Fourth Amendment claims were raised and found to have been violated. To allow the prosecution to use the suppressed items in the manner proposed by them would render the November 17th ruling a meaningless and hollow exercise and place the Court in a position of condoning and approving the conduct of law enforcement personnel who ignore and gloss over clearly established constitutional and legal principles.

It may be that the exclusion of Hinckley's statements and the Butner papers will deprive the prosecution of evidence which it intended to use and has relied upon. However, the notion that "the government's experts must disclose *all* of the factual information which underlies their conclusions," *United States v. Bennett*, 460 F.2d 872, 876 (D.C.Cir.1972) is not without limits. A prosecution's verdict should not be obtained at any cost. "[W]hat is important is that

the Constitution does not countenance police misbehavior, even in pursuit of truth. The processes of our judicial system may not be fueled by the illegalities of government authorities." *United States v. Havens*, 446 U.S. at 633, 100 S.Ct. at 1920 (Brennan, J., dissenting).