**Alton A. BEST, et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

**Civ. A. No. 89–3382–LFO.**

United States District Court, District of Columbia.

Aug. 10, 1990.

Stephen L. Braga, Jay L. Alexander, Miller, Cassidy, Larroca & Lewin, Washington, D.C., for plaintiffs.

Harry Toussaint Alexander, Jr., Asst. Corp. Counsel, D.C., Correctional Litigation Section, Washington, D.C., for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 and the common law of the District of Columbia, alleging violations of their privacy rights. Plaintiffs are 23 D.C.Code offenders who were videotaped without their consent while they were hand-cuffed and chained by the feet and around their waists. Defendants move to dismiss or for summary judgment. Defendants have also moved for a protective order limiting discovery pending decision on the Motion to Dismiss. For the reasons stated herein, the defendant's motion to dismiss or for summary judgment will be denied and the motion for a protective order is rendered moot.

### I.

Plaintiffs were inmates at the Lorton Reformatory in Lorton Virginia. During the night of December 14, 1988, plaintiffs were roused from their cells without warning and taken to a Lorton gymnasium where they were chained in hand-cuffs, leg-irons, and belly chains. At approximately 2:30 a.m. on the morning of December 15, 1988, plaintiffs were transported to Dulles Airport, placed aboard a plane, and flown to the state of Washington where they were placed in the Spokane County Jail in Spokane, Washington. They were accompanied by Department of Corrections personnel, including defendant Officer Raymond Ballard and defendant Patricia Britton, the Coordinator of Special Projects. From time to time during the flight, defendant Ballard walked through the rear of the plane where plaintiffs were seated and videotaped plaintiffs. Some of the plaintiffs objected, some hid their faces, some tried to hide their faces but the hand-cuffs and chains prevented them from doing so, and others were sleeping.

### II.

■ The government moves to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) or in the alternative for summary judgment. Fed.R.Civ.P. 12(b)(6) permits dismissal of a claim only if, construing the allegations in the complaint in favor of the plaintiff, it is beyond doubt that plaintiff can prove no set of facts that would justify relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Summary judgment is proper only when there is no genuine issue of material fact. Fed.R.Civ.P. 56.

Certain of the claims in defendants' Motion are appropriately treated under summary judgment because defendants have submitted, attached to their Motion, a "Statement of Material Facts not in Dispute" and a "Declaration of Patricia B. Britton," which constitute matters outside the pleadings. When such matters are considered, a motion for dismissal under Rule 12(b)(6) is treated as a summary judgment motion pursuant to Fed.R.Civ.P. 12(b). With respect to those claims in defendants' Motion to which the Statement and Declaration do not apply, the Motion will be treated as a Motion to Dismiss under Rule 12(b)(6).

### III.

■ Defendants' initial contention is that the District of Columbia is not a suable entity under 42 U.S.C. § 1983. Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or Territory or the District of Columbia [deprives any citizen of their rights under the Constitution or

laws] shall be liable to the party injured ...

The Supreme Court has clearly held that a municipality is a "person" and may be held liable under § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), overruling *Monroe v. Pape*, 365 U.S. 167, 187–91, 81 S.Ct. 473, 484–86, 5 L.Ed.2d 492 (1961). In contrast, however, the Court has recently held that a state is not a "person" within the meaning of § 1983 and may not be sued under that section. *Will v. Michigan Dept. of State Police*, — U.S. —, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

The District of Columbia is a "body corporate for municipal purposes." D.C.Code § 1–102(a). In addition, the District has been treated as a municipality by courts. *See, e.g., Haynesworth v. Miller*, 820 F.2d 1245, 1271–72 (D.C.Cir.1987). The question therefore is whether, as asserted by defendants, the District of Columbia also qualifies as a state for purposes of the definition of "person" under § 1983. *Will* does not so hold. The Court's reasoning in *Will* was based largely on Eleventh Amendment considerations and the Court clearly limited its holding to entities protected by the Eleventh Amendment:

> [P]rior to *Monell* the Court had reasoned that if municipalities were not persons then surely states also were not. And *Monell* overruled *Monroe*, undercutting that logic. But it does not follow that if municipalities are persons then so are States. States are protected by the Eleventh Amendment while municipalities are not, and we consequently limited our holding in *Monell* "to local government units which are not considered part of the State for Eleventh Amendment purposes." Conversely, our holding here does not cast any doubt on *Monell*, and applies only to States or governmental entities that are considered "arms of the State" for Eleventh Amendment purposes.

*Will*, 109 S.Ct. at 2311 (citations omitted); *see also id.* at 2309. The Eleventh Amendment, and thus *Will*, does not apply to the District of Columbia. *See Committee of*

*Blind Vendors v. District of Columbia*, 695 F.Supp. 1234, 1241, n. 6 (D.D.C.1988).

The Supreme Court also has held recently that territories are not "persons" for purposes of § 1983. *Ngiraingas v. Sanchez*, — U.S. —, 110 S.Ct. 1737, 109 L.Ed.2d 163 (1990). As with states, the Court's rationale with respect to territories does not apply to the District of Columbia, which is a municipality. The Court's holding in *Ngiraingas* was based on its interpretation of Congress' 1874 redefinition of the term "person" in § 2 of the Dictionary Act, 16 Stat. 431, from "bodies politic and corporate" to "partnerships and corporations." *Id.* at 1742–43. Legislative history led the Court to conclude that territories were not considered corporations at the time. The Court noted, though, that the reasoning in *Ngiraingas* "is fully consistent with [its] decision in *Monell*," since the legislative history indicated that corporations did include municipal corporations, which were considered "persons." *Id* at 1743, n. 11. The District of Columbia, as a municipal corporation, is not subject to the same considerations applied to territories in *Ngiraingas*.

Defendants also argue that the jurisdictional statute associated with § 1983, 28 U.S.C. § 1343, establishes that the District is a state for purposes of § 1983. Section 1343(a)(3) provides for original jurisdiction in the district courts for any action "[t]o redress the deprivation, under color of any State law, statute, ordinance, regulation or usage of any [Constitutional or federal right]." Section 1343(b)(1) states: "For purposes of this section ... the District of Columbia shall be considered to be a State...." Defendants' argument that, because the District of Columbia is considered a state for purposes of § 1343, it must be one for purposes of the definition of "person" under § 1983 fails for several reasons.

First, section 1343(b) explicitly states that its definition of the District is for purposes of that section; there is no evidence that it is appropriately applicable to any other section. Second, as noted by plaintiffs, if § 1343's definition of the Dis-

trict applied to § 1983 then the language in § 1983 applying to any violation "under color of [law] of any state or Territory or the District of Columbia" would be redundant. Third, § 1343(b) was added to § 1343 in 1979 at the same time § 1983 was amended to include the District of Columbia, thereby providing liability for actions taken "under color of [the laws] of any state or Territory or the District of Columbia." Pub.L. No. 96–170, §§ 1, 3, 93 Stat. 1284 (1979). The rationale for both amendments was to include deprivations of federal law taken "under color of" District of Columbia law rather than to define the District as a "person" or not a "person." *See* H.R. Rep. No 548, 96th Cong., 1st Sess. 1, 2–3, *reprinted in* 1979 U.S.Code Cong. & Admin.News 2609. And finally, there is no reason to extend the definition of the District of Columbia as a state from § 1343(b) to the meaning of "person" under § 1983, particularly in light of the fact that the District is not subject to Eleventh Amendment or other sovereign immunity and thus the rationale for the holding that states are not "persons" does not apply to it.

Plaintiffs contend that when Congress amended § 1983 to add District of Columbia law to its provision for actions taken under color of the law of "any state or Territory or the District of Columbia," it intended to subject the District of Columbia to liability as a "person." The House Report accompanying the amendment does include some indication of congressional intent to subject the District to the same liability as municipalities under *Monell*, stating for example that *Monell* "leaves the District of Columbia government and its officers as the only persons in the United States or its territories who are not subject to Section 1983 liability." *Id* at 2, 1979 U.S.Code Cong. & Admin.News 2610. This legislative history supports the argument that the District may be considered a "person" though it is not by itself sufficient to make that finding, since, as noted above, whether persons acting "under color of" an entity's laws are liable and whether that entity is liable for its actions as a "person" are two separate issues, as demonstrated by the Supreme Court's recent holdings in *Will* and *Ngiraingas* that states and territories are not "persons."

Even though Congress' amendment of § 1983 to include District of Columbia law is not decisive on the question of whether the District is a "person," case law leading up to the amendment points in that direction. Congress' amendment legislatively overruled Supreme Court precedent to the contrary in *District of Columbia v. Carter*, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), which held that persons acting under color of District law were *not* liable under § 1983 because the District of Columbia was not a state or a territory. The Court in *Carter* overturned a D.C. Circuit case holding both that District of Columbia law was included in the laws "under color of" which 1983 violations could be established *and* that the District was a "person" for purposes of § 1983. *Carter v. Carlson*, 447 F.2d 358 (D.C.Cir. 1971). On review, though, the Supreme Court expressly declined to consider the question of whether the District was a "person." *District of Columbia v. Carter*, 409 U.S. at 420, n. 3, 93 S.Ct. at 604 n. 3. Therefore, though the Circuit decision finding liability for persons acting "under color of" District law was overturned and subsequently reinstated legislatively, its holding that the District is a "person" has not been disturbed. Moreover, neither Congress, the Supreme Court, nor the D.C. Circuit considered the District a state for purposes of these proceedings.

The District of Columbia is a unique political entity. *See District of Columbia v. Carter*, 409 U.S. 418, 432, 93 S.Ct. 602, 610, 34 L.Ed.2d 613 (1973) (D.C. is an "exceptional community") (citing *District of Columbia v. Murphy*, 314 U.S. 441, 452, 62 S.Ct. 303, 308, 86 L.Ed. 329 (1941)). Nonetheless, for the reasons stated above, the District of Columbia falls under *Monell's* holding for municipalities and not under *Will's* holding with respect to states for purposes of the definition of "person" under § 1983. *Accord O'Callaghan v. District of Columbia*, 741 F.Supp. 273 (D.D.C. 1990) (Pratt, J.); *Wright v. District of Columbia*, Civil Action No. 87–2157, 1990 WL

95640 (filed June 21, 1990) (Lamberth, J.); *Harris v. District of Columbia,* Civil Action No. 88–0555 (filed June 15, 1990) (Johnson, J.).

## IV.

■ Defendants' second argument is that plaintiffs have not alleged facts that make out a claim for violation of their privacy rights under the Constitution. Privacy rights are recognized under the Constitution, though courts have balanced such rights against governmental needs limiting them. *Whalen v. Roe,* 429 U.S. 589, 602, 97 S.Ct. 869, 877, 51 L.Ed.2d 64 (1977); *Nixon v. Administrator of General Services,* 433 U.S. 425, 456–57, 97 S.Ct. 2777, 2796–97, 53 L.Ed.2d 867 (1977).

A prisoner retains constitutional rights, though, as with other citizens' rights, courts have balanced them against governmental interest and diminished them where necessary to maintain institutional objectives. *Bell v. Wolfish,* 441 U.S. 520, 545–46, 99 S.Ct. 1861, 1877–78, 60 L.Ed.2d 447 (1979); *Wolff v. McDonnell,* 418 U.S. 539, 555–56, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974). "Inmates in jails, prisons, or mental institutions retain certain fundamental rights of privacy: they are not like animals in a zoo to be filmed and photographed at will by the public or by media reporters, however 'educational' the process may be for others." *Houchins v. KQED, Inc.,* 438 U.S. 1, 5 n. 2, 98 S.Ct. 2588, 2592 n. 2, 57 L.Ed.2d 553 (1978). The Tenth Circuit has held that a prisoner's privacy rights are violated when personal photographs were shown to members of the public by the police if the prisoner had a legitimate expectation of privacy in the pictures and that interest outweighed the public need for their disclosure. *Slayton v. Willingham,* 726 F.2d 631, 635 (10th Cir.1984). Similarly, the Central District of Illinois has found that a prison official who allowed a news reporter to film a prisoner in his cell against his will violated his constitutional rights because he had a legitimate and reasonable expectation of privacy. *Smith v. Fairman,* 98 F.R.D. 445, 450 (C.D.Ill.1982). Furthermore, numerous courts have found that prisoners do not surrender their privacy rights while in prison for purposes of the Fourth Amendment absent some justification by the institution. *See United States v. Hinckley,* 525 F.Supp. 1342, 1360 (D.D.C.1981), *amended,* 529 F.Supp. 520 (1982), *aff'd* 672 F.2d 115 (D.C. Cir.1982); *Bonner v. Coughlin,* 517 F.2d 1311, 1316 (7th Cir.1975), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978); *United States v. Savage,* 482 F.2d 1371, 1372–73 (9th Cir.1973), *cert. denied,* 415 U.S. 932, 94 S.Ct. 1446, 39 L.Ed.2d 491 (1974). In the briefs before the Court in this action, defendants have not made any showing that institutional exigencies required the videotaping.

Instead, defendants contend that the claim may be dismissed because an individual's privacy right can not be violated in the absence of a public disclosure. However, this assertion, as noted by plaintiffs, is both legally and factually flawed. In the first place, plaintiffs may have a legitimate expectation of privacy in the film itself whether or not it is publicly disclosed. *See Slayton,* 726 F.2d at 635; *Smith,* 98 F.R.D. at 450. In addition, defendants concede that the film has been shown to Department of Corrections personnel and such showing may violate plaintiffs' privacy rights. In any event, plaintiffs allege that the defendants have displayed the videotape to unknown third parties. In fact, plaintiffs allege that a version of the videotape that included footage of a different flight was released to an attorney representing three of the plaintiffs in this action in response to a Freedom of Information Act request. In addition, plaintiffs seek a court order prohibiting future showing of the film. Accordingly, construing the allegations in favor of the plaintiffs as required by Rule 12(b)(6), the motion to dismiss cannot succeed on this point.

## V.

Defendants present several additional arguments, none of which provide the showing necessary to dismiss or issue summary judgment. First, defendants assert that plaintiffs fail to make out a claim for intentional infliction of emotional distress.

Plaintiffs point out, however, that they do not assert a claim for intentional infliction of emotional distress, rather, their claim relies on the common law tort of invasion of privacy, as recognized by *Vassiliades v. Garfinckel's*, 492 A.2d 580, 587 (D.C.1985).

■ Defendants further contend that Patricia Britton should be dismissed as a defendant because her duties were limited to administrative tasks and she was not responsible for videotaping. Defendants submitted the Statement of Material Facts Not in Dispute and the Declaration of Patricia Britton as support for this claim, and thus the standards associated with summary judgment rather than dismissal apply to this claim. In any event, plaintiffs convincingly respond that Britton's declaration, stating that she accompanied the prisoners on the flight in which they were videotaped and that her responsibilities included the administrative aspects of the transfer, creates an issue of fact as to her role in the videotaping. Plaintiffs note that knowledge of the scope of Britton's responsibilities and actions is in the possession of defendants and that without discovery they are unable to adequately contest the issue of whether Britton played a supervisory role. Thus genuine issues of material fact prevent summary judgment on this issue at this time.

■ Lastly, defendants Britton and Ballard assert the defense of qualified immunity, relying largely on *Siegert v. Gilley*, 895 F.2d 797 (D.C.Cir.1990). *Siegert* discusses qualified immunity in connection with a suit for damages under the doctrine of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). However, *Monell* and *Will* established that the liability of officials sued under § 1983 stems from the liability of the governing entity. Accordingly, *Monell* stated that "local government officials sued in their official capacities are 'persons' under § 1983 in those cases where, as here, a local government would be suable in its own name." 436 U.S. at 690 n. 55, 98 S.Ct. at 2035 n. 55. *Will* established the counter holding that a § 1983 action against state

officials may not be maintained because "it is no different from a suit against the State itself." 109 S.Ct. at 2311. Thus, under *Monell*, District of Columbia officials are not immune from suit because the District of Columbia itself is liable as a "person."

In summary, plaintiffs have alleged facts which make out a claim for relief. Defendants have not demonstrated either that the District of Columbia may not be sued as a "person" pursuant to § 1983 or that the allegations are insufficient to create a claim for violation of plaintiffs' privacy rights under the Constitution. Neither have defendants demonstrated that plaintiffs' common law claims are insufficient, that there are no disputed issues of fact with respect to the participation of defendant Britton in the alleged deprivation, or that defendants Britton and Ballard may be dismissed on a defense of qualified immunity.

Accordingly, for the aforementioned reasons, an accompanying order will deny defendants' Motion to Dismiss or in the Alternative for Summary Judgment. Defendants' Motion for a Protective Order requesting that discovery not be conducted pending the Court's decision on the Motion to Dismiss is rendered moot.

## ORDER

For the reasons stated in the accompanying Memorandum, it is this 10th day of August, 1990, hereby

ORDERED: that defendants' Motion to Dismiss the Complaint or, in the Alternative, for Summary Judgment should be, and is, hereby DENIED; and it is further

ORDERED: that defendants' Motion for a Protective Order is rendered moot.