Scott David **LATTANY,**

v.

**FOUR UNKNOWN U.S. MARSHALS, et al.**

Civ. A. No. 93–0431.

United States District Court, E.D. Pennsylvania.

Feb. 10, 1994.

Joseph A. Torregrossa, Charles J. Reitmeyer, Morgan Lewis & Bockius, Philadelphia, PA, for plaintiff.

James G. Sheehan, Asst. U.S. Atty., Philadelphia, PA, for defendants.

*MEMORANDUM AND ORDER*

ANITA B. BRODY, District Judge.

In deciding defendants' motion to dismiss, I must determine whether plaintiff's allegation that the defendants violated his constitutional right to privacy by taking photographs of him without his consent while he was in custody as a pre-trial detainee states a cognizable constitutional claim. I must also decide whether his Fourteenth Amendment right to medical treatment was violated by delaying a necessary trip to the hospital after a vehicle accident which occurred in transporting him from court to jail. I find that the plaintiff has stated a constitutional violation in both cases.

I must next decide whether the defendants were entitled to qualified immunity because the constitutional rights violated by the defendants were not "clearly established" at the time of the incidents. I find that defendants' photographing conduct did not violate a clearly established right, and that the medical attention conduct did violate a clearly established right.

## I. Facts

The plaintiff alleges in his complaint that the following sequence of events, which for purposes of this motion I must accept as accurate, occurred on January 31, 1991:

▪ The plaintiff was representing himself *pro se* on criminal charges in the Federal Courthouse at 601 Market Street in Philadelphia. The plaintiff was in custody as a pretrial detainee. At approximately 6:00 p.m. the plaintiff and other prisoner were escorted by two unnamed marshals (designated Marshals # 1 and # 2 in plaintiff's complaint)[1] from his holding cell to the parking lot. There they met a third marshal (Marshal # 3). Marshal # 3 instructed Marshal # 1 to hold the prisoners so that he could take their pictures. The allegations infer that the photographs were not for law enforcement or security purposes.

The plaintiff told the Marshals that the picture-taking was illegal and racist. Marshal # 3 cursed the plaintiff, using racial epithets, and told him to shut up. Photographs were taken of the plaintiff handcuffed and sitting in the back of the transportation van. At least one other prisoner was forced to be photographed as well. The plaintiff attributed the picture-taking activity to Marshals # 1 and # 3. Marshal # 2 merely observed the incident.

Marshal # 4, who was not previously identified in the complaint, upbraided Marshal # 2 for not interceding to stop Marshals # 1 and # 3. This led to an altercation between # 2 and # 4. After the confrontation ended, Marshal # 2, the intended driver of the van, passed on that responsibility to # 1 because he was too shaken to drive.

Marshals # 1 and # 2 were the only Marshals in the van, with Marshal # 1 driving, when they left to take the prisoners back to prison. As they traveled north on 6th Street, less than 100 feet from the federal courthouse, Marshal # 1 cut from the left into the right lane causing the van to be struck by another car from behind.

The plaintiff felt pain in his neck and back and numbness in his legs, and informed the Marshals that he needed to go to a hospital. Another prisoner complained he was injured as well. According to the complaint, there was a hospital across the street from the accident. The plaintiff informed the Marshals of this circumstance. Marshal # 1 repeatedly rejected any entreaties for medical care.

The van and its occupants waited forty-five minutes at the accident site while the Marshals prepared a police report. The Marshals laughed and joked during this wait. Eventually Marshal # 2 suggested that medical care should be pursued. Marshal # 1 sloughed off this suggestion.

Marshal # 1 then drove the prisoners back to the Philadelphia Detention Center. Upon arriving, Marshal # 1 left the prisoners in the van while he went into the administrative section of the prison. After ten minutes, he returned and informed Marshal # 2 that the prisoners had to be taken to the hospital. When Marshal # 2 asked what the closest hospital was, Marshal # 1 responded: "I'm not taking them to none of them fancy hospitals, those bastards are going to Guiffre, where they take your kidney out to operate on your toe!"

Marshal # 1 then drove the van to the Girard Medical Center at 8th and Girard Streets. This took approximately 30 minutes. The prisoners were left waiting in the parking lot for approximately thirty minutes in cold weather. After the plaintiff complained about the wait, Marshal # 1, in retaliation, made the prisoners wait twenty more minutes.

At approximately 9:30, three hours after the accident, the plaintiff was taken into the hospital. The plaintiff told a nurse of his complaints—pain in his back and neck, and numbness in his legs. Marshal # 1 told the

---

1. Defendants assert lack of personal jurisdiction and failure to correctly serve because the Marshals were not individually identified. The procedure of filing complaints and serving government officials as "John Does" is a common one, and has been accepted as proper by other courts.

*See e.g. Ecclesiastical Order of Ism of Am, Inc. v. Chasin,* 653 F.Supp. 1200, 1203 (E.D.Mich. 1986), aff'd 845 F.2d 113 (6th Cir.1988). Plaintiff will be in a better position to identify the defendants after discovery, and I will not dismiss for failing to do so at this juncture.

plaintiff to stop faking. Marshal # 1 took the nurse aside and whispered to her.

The nurse took x-rays, and gave the plaintiff orange pills for pain. When the plaintiff asked if he was to be admitted to the hospital the nurse responded "I'm afraid not."

The plaintiff then returned to van where he waited four hours in the cold while the other prisoners were examined. Marshal # 1 refused his requests to wait inside.

Upon return to the detention center, the plaintiff believes Marshal # 1 tried to sneak him in without turning over the accident report. The sergeant on duty caught this omission and retrieved the report from Marshal # 1. After the sergeant filled out a report he had plaintiff escorted to the prison infirmary where he was given more medication.

By the time plaintiff returned to his cell it was 5:00 a.m. He had to wake shortly after to be back in court to conduct his defense on criminal counts. The plaintiff attributes to his lack of sleep and the effects of medications his inability to respond to jury instructions, and a jury question to the court. Plaintiff was convicted on two of five criminal counts.

## II. Procedural Posture

Defendants have moved to dismiss and in the alternative for summary judgment. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) will be granted only when no relief is possible under any set of facts that could be proved consistent with the allegations. *Warner Cable Communications, Inc. v. Borough of Schuylkill Haven,* 784 F.Supp. 203, 205 (E.D.Pa.1992). All allegations in the complaint and all reasonable inferences that could be drawn therefrom will be accepted as true and viewed in the light most favorable to the non-moving party. *Unger v. National Residents Matching Program,* 928 F.2d 1392, 1400 (3d Cir.1991).[2]

## III. Bivens Action

The plaintiff has filed a *Bivens* action, *see Bivens v. Six Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which operates, as 42 U.S.C. § 1983 does against state officials, to create liability for misconduct by federal officials which violates the constitution. *See id.* The same principles which apply to suits under § 1983, including the defense of qualified immunity, apply to *Bivens* actions. *Hunter v. Bryant,* — U.S. —, —, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991), *Young v. Keohane,* 809 F.Supp. 1185 (M.D.Pa.1992).

Defendants' motion to dismiss rests on the grounds that plaintiff has failed to state a constitutional claim, and that the defendants are entitled to qualified immunity because any constitutional rights which were violated were not "clearly established" at the time that the violations took place.

It is clear from the holding in *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), that I must rule on the defendants' motion in a two-step analysis: first, I must address the merits of the underlying constitutional claim; next I must determine whether the right alleged to have been violated was "clearly established." The Supreme Court in *Siegert* asserted that "[a] necessary concomitant to the determination of whether the constitutional right asserted by the plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." 500 U.S. at 232, 111 S.Ct. at 1793. The Supreme Court established this procedure to resolve the issue for which certiorari was granted— to clarify "the analytical structure under which a claim of qualified immunity should be addressed." 500 U.S. at 231, 111 S.Ct. at 1793. In doing so, the Court rejected the D.C. Circuit's implicit and concurring Justice Kennedy's explicit assertion that if "there is some doubt as to the constitutional right asserted, it seems to reverse the usual ordering of issues to tell the trial and appellate courts that they should resolve the constitu-

---

**2.** The defendants' designation of the motion as including "in the alternative for summary judgment" does not at this point, before an answer has been filed and before discovery has begun, change this analysis.

tional question first." *Siegert,* 500 U.S. at 235, 111 S.Ct. at 1795 (Kennedy, J., concurring).

This more "complete" examination of the plaintiff's constitutional claim is a practice which has been urged upon court's in this circuit even before the *Siegert* decision was announced. *See Brown v. Grabowski,* 922 F.2d 1097, 1110 (3d Cir.1990), cert. denied, 501 U.S. 1218, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991). The benefit of this procedure is that clearly meritless claims can be disposed of without the exhaustive search for precedents that the clearly-established analysis requires. Thus, judicial economy will often be served by beginning the exercise of analyzing such claims with an examination of the underlying constitutionality, *cf. Siegert,* 500 U.S. at 233-34, 111 S.Ct. at 1794; *Brown,* 922 F.2d at 1110.

### A. Photographing the Plaintiff Without Consent and Without a Law Enforcement Purpose

■ The plaintiff contends that the Marshals violated his constitutional right to privacy by photographing him without permission and without a law enforcement justification.[3]

In *Best v. District of Columbia,* · 743 F.Supp. 44 (D.D.C.1990), the court denied defendants' motion to dismiss or for summary judgment against a complaint by prisoners that they were videotaped while chained and handcuffed during transportation between prisons. The court found that the prisoners privacy rights were violated regardless of whether the film was ever publicly disclosed. *Id.* at 48. As the Supreme Court has recognized "[i]nmates in jails, prisons, or mental institutions retain certain fundamental rights of privacy: they are not like animals in a zoo to be filed and photographed at will by the public or by media reporters, however 'educational' the process may be for others." *Houchins v. KQED, Inc.,* 438 U.S. 1, 5 n. 2, 98 S.Ct. 2588, 2592 n. 2, 57 L.Ed.2d 553 (1978).

I find that the allegations in the instant case are substantially similar to the facts of *Best.* The allegations in the plaintiff's complaint raises the same concern for individual dignity which the Supreme Court and the *Best* court recognized. The plaintiff and other prisoners were photographed against their opposition while handcuffed and in custody. Absent any law enforcement rationale for the photographs, which from the allegations I can infer none, the Marshals' alleged actions were nothing more than a personal frolic, falling within the ambit of *Houchins.*

■ Per Justice Rehnquist's mandate in *Siegert,* the finding of a constitutional violation only begins my inquiry. While the D.C. District Court holding in *Best,* 743 F.Supp. 44, guides my decision as to whether an underlying constitutional violation was alleged, the Third Circuit has made clear that for the purpose of clearly establishing the right for qualified immunity purposes, a single out-of-circuit district court decision is insufficient. *Brown,* 922 F.2d at 1118-19.[4]

---

**3.** Plaintiff has alleged this violation under the First Amendment. I believe that plaintiff's right to privacy is more properly analyzed under the Fourth and Fourteenth Amendments. *Cf. Smith v. Fairman,* 98 F.R.D. 445, 449-51 (C.D.Ill.1982). However, as defendants' motion acknowledges, as a *pro se* plaintiff the plaintiff is entitled to liberal construction of his complaint. Therefore, I will evaluate it under the correct provisions of the constitution.

**4.** The Supreme Court has not clearly delineated what nature of precedents are necessary to constitute a "clearly established" right. *See Ohio Civil Service Employees Association v. Seiter,* 858 F.2d 1171, 1175 (6th Cir.1988). Nor has the Third Circuit, except to establish the floor that a single out-of-circuit district court decision is not sufficient. *Brown,* 922 F.2d at 1118-19.

The number and nature of precedents necessary to "clearly establish" a right varies throughout other circuits, and sometimes even within a circuit. *Cf. Ward v. County of San Diego,* 791 F.2d 1329, 1333 (9th Cir.1986), cert. denied, *Duffy v. Ward,* 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987); *Capoeman v. Reed,* 754 F.2d 1512, 1514 (9th Cir.1985) (in the absence of binding precedent, a court should look to whatever decisional law is available to ascertain whether the law is clearly established); *Courson v. McMillian,* 939 F.2d 1479, 1498 (11th Cir. 1991) (a law enforcement officer cannot be held to a standard of conduct unsettled by the Supreme Court, 11th Circuit, or highest state courts in the circuit); *Greason v. Kemp,* 891 F.2d 829 (11th Cir.1990) (to decide a clearly established right, court looks to the law established by the Supreme Court, the courts of appeals, and the district courts); *Robinson v. Bibb,* 840 F.2d 349,

Several other out-of-circuit courts have found violations in more distantly analogous circumstances. *See Slayton v. Willingham,* 726 F.2d 631 (10th Cir.1984) (violation alleged if plaintiff could prove legitimate expectation of privacy in personal photos shown to others as part of criminal investigation); *Smith v. Fairman,* 98 F.R.D. at 447 (plaintiff filmed while in his private cell). Nevertheless, even if a right could be "clearly established" by the sum total of a number of out-of-circuit holdings, these decisions are not sufficiently analogous to *Best* or the instant case to illuminate the contour of the right plaintiff alleges was violated by the Marshals' conduct. Furthermore, a decision in this circuit rejected the constitutional claim of an inmate who alleged being filmed by a television crew while in the main corridor of Grateford Prison. *Jones/Seymour v. Le-Febvre,* 781 F.Supp. 355 (E.D.Pa.1991), aff'd, 961 F.2d 1567 (3d Cir.1992). While that decision distinguished the *Best* decision's more disconcerting facts, and thus arguably implicitly acknowledged the constitutional viability of the claims in that case, and by analogy the claims before me, it can only be read to detract from the certainty of the broader right not to be photographed or filmed at all that might be drawn from *Slayton* or *Smith, supra.*

Accordingly, while I find that the plaintiff has stated a constitutional claim against the Marshals for invasion of privacy, the right was not established in this circuit to a degree sufficient to have put them on notice.

## B. Delay in Providing Medical Attention to the Plaintiff

■ Pre-trial detainees are protected against inadequate inattention to medical needs under the Due Process Clause, rather than the Eight Amendment which is applied to convicted prisoners. *See City of Revere v. Massachusetts General Hospital,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983); *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In this circuit, the standard applied to pre-trial detainees is the same as that applied to prisoners: "deliberate indifference to serious medical needs." *Boring v. Kozakiewicz,* 833 F.2d 468, 471 (3d Cir.1987), cert. denied, 485 U.S. 991, 108 S.Ct. 1298, 99 L.Ed.2d 508 (1988).

■ The plaintiff alleges that the Marshals did not take him to a hospital, despite repeated requests, until more than three hours after a vehicle accident. In between the accident and the eventual trip to the hospital, the Marshals took the plaintiff all the way back to the prison. The allegations imply that the Marshal would not have taken the plaintiff to the hospital at all absent insistence by prison officials. Several quoted remarks by the Marshals and the plaintiff's allegation that Marshal # 1 tried to sneak him into prison at night without filing his medical report, if true, further support my ruling that at this stage of the litigation plaintiff has sufficiently alleged the necessary culpable mental state of "deliberate indifference." *Cf. Monmouth County Correctional Institutional Inmates v. Lanzaro,* 834 F.2d

351 (6th Cir.1988) (to be clearly established a question must be decided either by the highest state court in the state where the case arose, by a United States Court of Appeals, or by the Supreme Court).

For some courts, the nature of the precedents required seems to vary depending on the nature of the right asserted. *See Ohio Civil Service,* 858 F.2d at 1177:

[I]n the ordinary instance, to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals or itself. In an extraordinary case, it may be possible for the decisions of other courts to clearly establish a principle of law. For the decisions of other courts to provide such "clearly established law," these decisions must both point unmistakably to the unconstitutionality of the con-

duct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting.

*See also K.H. v. Morgan,* 914 F.2d 846, 851 (7th Cir.1990):

It ... seem[s] [that] to survive a motion to dismiss a suit on grounds of immunity the plaintiff must be able to point to a previous case that differs only trivially from his case. But his cannot be right. The easiest cases don't even arise. There has never been a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages liability because no previous case had found liability in those circumstances.

326, 346 (3d Cir.1987), cert. denied, 486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988) ("[w]here ... authorities deny reasonable requests for medical treatment ... and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest").

■ The plaintiff must also allege serious medical need. While inattention to minor injuries will not cause a due process violation, authorities will be accountable for injuries which are serious or which they have reason to suspect are serious. *Boring*, 833 F.2d at 473; *Brownell v. Figel*, 950 F.2d 1285, 1291 (7th Cir.1991); *see also Lanzaro*, 834 F.2d at 347 (unnecessary denial or delay in treatment which causes inmate to suffer pain or increases chance of permanent injury constitutes indifference to serious medical need).

■ In his complaint, plaintiff asserts that the accident caused pain to his back and neck, and numbness in his legs. In his response to summary judgment, the plaintiff contends that he still suffers from the injury, to the extent that he is unable to play basketball. Because plaintiff was without counsel when the complaint was first filed, I will consider the allegations in the response as part of the pleadings. I find that these allegations are sufficient to create an issue of fact regarding whether there were serious medical needs. Furthermore, unlike many indifference-to-medical needs cases, *see Boring*, 833 F.2d at 473, the plaintiff's medical needs were not the result of a pre-existing condition the potential seriousness of which the officials might have been unaware, but instead, according to the allegations, resulted from the Marshals' own conduct. According to the stated facts, they had every reason to suspect serious injury at the time of the accident, so that, even if the injuries turn out

not to be egregious, at the time of the alleged violation the threat of serious injury might have existed.

■ There is no meaningful dispute regarding qualified immunity. The right of both convicted prisoners and pre-trial detainees not to suffer deliberate indifference to serious medical needs is clearly established. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Boring*, 833 F.2d 468 (3d Cir.1987).

## IV. Conspiracy to Violate Civil Rights

■ The plaintiff has also sued under 42 U.S.C. § 1985(3), claiming a conspiracy to violate constitutional rights. The elements of a 42 U.S.C. § 1985(3)[5] action are (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of equal protection of the laws; otherwise labeled "class-based animus"; (3) an act in furtherance of the conspiracy; (4) whereby a person is deprived of a right or privilege. *United Brotherhood of Carpenters & Joiners of America, Local 610, AFL–CIO v. Scott*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3355–56, 77 L.Ed.2d 1049 (1983). Federal officials can be sued under this statute. *Wilson v. Rackmill*, 878 F.2d 772, 775 (3d Cir.1989).

■ Defendants challenge plaintiff's allegations of conspiracy, "class-based animus," and the violation of a right or privilege. At this stage of the litigation, I find that plaintiff has sufficiently alleged all three elements. Plaintiff alleges numerous racial epithets which constitute evidence that the Marshals were racially motivated in their treatment of him and other prisoners. The conspiracy element is sufficiently alleged by reference to the acts of cooperation between the Marshals in taking the photographs and not taking him

5. The statute provides in pertinent part
   If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the law; ... if

one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.
42 U.S.C. § 1985(3).

for medical care. *Cf. Delong Equipment Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499, 1515 (11th Cir.1989), cert. denied, 494 U.S. 1081, 110 S.Ct. 1813, 108 L.Ed.2d 943 (1990); *Halberstam v. Welch,* 705 F.2d 472, 477 (D.D.C.1983) (proof of tacit, as opposed to explicit, understanding is sufficient to show agreement).

The alleged deprivation of "rights and privileges," required as the fourth element of a § 1985(3) claim, are the same as those I have addressed in determining the viability of plaintiff's *Bivens* claim—the alleged constitutional violations for both the photograph taking and the attention to medical needs. I have ruled on both counts that a constitutional violation has been sufficiently alleged to resist a motion to dismiss. I am withholding judgment on the issue of whether the defense of qualified immunity is available for actions brought under § 1985(3), so that the parties will have an opportunity to file written arguments on the issue in the interim. *See Burrell v. Board of Trustees of Ga. Military College,* 970 F.2d 785 (11th Cir.1992), cert. denied, —— U.S. ——, 113 S.Ct. 1814, 123 L.Ed.2d 445 (1993) (no qualified immunity defense available to officials sued under § 1985(3)); *Auriemma v. Rice,* 910 F.2d 1449 (7th Cir.1990), cert. denied, 501 U.S. 1204, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991) (qualified immunity defense available under § 1985(3)). Because there are outstanding issues of fact regarding the racial animus and conspiracy, I will deny the motion to dismiss without prejudice to bringing a motion for summary judgment on those issues.

### V. Other Claims

The plaintiff has also alleged counts of racial discrimination, and procedural due process based on defendants harassment in opposition to his assertion of legal rights. Defendants have not challenged these claims in their motion to dismiss, and accordingly, the claims remain viable at this stage of the litigation.

The defendants have raised defenses against a potential Federal Tort Claims action. However, such a claim was never asserted in the plaintiff's complaint. Plaintiff's counsel in the response to summary judgment acknowledged that the plaintiff might file administrative claims in the appropriate federal agencies, but evinced no intention to raise such claims as a part of this action. Accordingly, I find the arguments by defendants in this regard to be moot.

The defendants also moved to dismiss plaintiff's claim for a declaration that his constitutional rights were violated. Plaintiff did not address this issue in his response, and therefore I assume that he is no longer pursuing that relief. Furthermore, the granting of declaratory relief is discretionary. *See Public Affairs Associates, Inc. v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 581, 7 L.Ed.2d 604 (1962). In this instance, the question regarding whether constitutional rights have been violated is already part of my ruling on the merits of plaintiff's claim for damages, making an independent request for declaratory relief unnecessary. I therefore decline to exercise jurisdiction over the request for declaratory relief. *Cf. Hansen v. Ahlgrimm,* 520 F.2d 768, 770 (7th Cir.1975).

**AND NOW,** this 10th day of February, 1994, **IT IS ORDERED** that

1. The defendants' motion to dismiss the plaintiff's *Bivens* action is GRANTED as to the invasion of privacy claim based on the photographing without consent

2. The defendants' motion to dismiss the plaintiff's *Bivens* action is DENIED as to the inattention to medical needs claim.

3. Defendants' motion to dismiss plaintiff's 42 U.S.C. § 1985(3) action is DENIED.

3. Defendants' motion to dismiss for improper service and lack of personal jurisdiction for failure to identify the defendants by name is DENIED.

4. Defendants' motion for summary judgment on the remaining *Bivens* and § 1985(3) claims is DENIED without prejudice to renewal after discovery is completed.

5. Defendants' motion to dismiss plaintiff's plea for declaratory relief is GRANTED.

6. Defendants' motion to dismiss plaintiff's FTCA claims are DENIED as moot.