William JONES/SEYMOUR

v.

Alan J. LeFEBVRE.

Civ. A. No. 90–2267.

United States District Court,
E.D. Pennsylvania.

Dec. 10, 1991.

Ronald P. Schiller, Philadelphia, Pa., for Bill Baldini & W.C.A.U. (CBS INC.)

Denise A. Kuhn, Office of Atty. Gen., Philadelphia, Pa., for Alan J. LeFebvre.

Madeleine Schachter, New York City, for CBS Inc. and Bill Baldini.

## MEMORANDUM AND ORDER

VanARTSDALEN, Senior District Judge.

Plaintiff, an inmate at the State Correctional Institute at Graterford, brought this Civil Rights action against Alan J. LeFebvre, the Superintendent's Assistant and News Media Relations Officer at Graterford. He also named Bill Baldini and W.C.A.U. TV, but he has since settled his dispute with CBS and these "CBS defendants" are no longer parties to this action. Defendant LeFebvre, the only remaining defendant, now moves for summary judgment. For the reasons stated below, his motion will be granted.

### I. *Standard for Summary Judgment*

A motion for summary judgment is appropriate only when there is no genuine issue of material fact, and one party is entitled to judgment as a matter of law. *Williams v. West Chester*, 891 F.2d 458, 463–64 (3d Cir.1989). The court must always consider the evidence, and the inferences from it, in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct.

993, 994, 8 L.Ed.2d 176 (1962); *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir.1987); *Baker v. Lukens Steel Co.*, 793 F.2d 509, 511 (3d Cir.1986). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

## II. Necessary Elements of a Section 1983 Claim

Plaintiff brings suit in federal court, alleging violations of 42 U.S.C. § 1983. This statute provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

There are two necessary elements of a claim arising under 42 U.S.C. § 1983: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) this conduct must have deprived plaintiff of rights, privileges, or immunities secured by the Constitution or federal law. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Defendant's motion for summary judgment is based on the second of these elements.

Defendant argues that plaintiff's claim does not allege a deprivation of any federal right. As this is an essential element of a suit under § 1983, if defendant is correct, his motion must be granted.

## III. The Facts as I Must Accept Them

In support of, and in opposition to, the motion for summary judgment, the parties have submitted affidavits.[1] As many facts are still in dispute, I must accept plaintiff's version of the facts for the purposes of this motion.

It is undisputed that on March 28, 1990, Bill Baldini and a W.C.A.U. cameraman were admitted to Graterford. The purpose of their visit was to gather information for a story they were doing on overcrowding at Graterford. They were accompanied through Graterford by the defendant. It is also undisputed that a story did air on W.C.A.U. television, with at least some of the video footage taped at Graterford being used in the broadcast.

Plaintiff claims that he was filmed by the cameraman in the main corridor at Graterford. Defendant does not challenge the fact that plaintiff was filmed. Plaintiff does not claim that he was filmed in an embarrassing situation.[2] That is, he does not claim that he was filmed while unclothed, or while performing some private act. He claims that he was filmed while walking down the main public corridor in the prison.

### A. Plaintiff Was Filmed Without Warning or Consent

Defendant claims that he provided oral warning to the inmates in the corridor. He

---

**1.** The parties have had the opportunity for rather extensive discovery. Many interrogatories and requests for document production have been served and answered. Additionally, plaintiff was afforded an opportunity to depose the defendant, and defendant's counsel deposed plaintiff. However, with the exception of defendant's answers to plaintiff's first set of interrogatories and first set of requests for document production, virtually none of the information disclosed by this discovery was brought to my attention for adjudication of this motion.

In large part, then, my decision rests on the controlling law, without the facts being significant. No motion for dismissal was ever filed

under Rule 12(b)(6), even though, given the law as explained here, it is likely that such a motion would have been granted. Perhaps defendant's counsel was under the impression that if a complaint survived the frivolousness test of 28 U.S.C. § 1915(d), it would also survive a motion for dismissal under Rule 12(b)(6). This is incorrect. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989).

**2.** To the extent that plaintiff claims he was indeed filmed in an embarrassing situation, that of being incarcerated, see the discussion of disclosure of public facts, *infra*.

claims that he told them that there was a video camera in the corridor, and that if they did not wish to be filmed they should leave. Plaintiff specifically denies the existence of any oral warning. Therefore, I will assume that no warning was given.

### B. *Plaintiff Suffered Injury*

Defendant argues that plaintiff did not appear on the broadcast. Defendant has viewed a tape provided by CBS, which is allegedly a complete tape of the story as it aired. He claims, by affidavit, that plaintiff nowhere appears on that tape. Plaintiff does not specifically oppose this statement, he does not claim that his image is on the videotape. He does, however, challenge the claim that the tape is the complete film of the broadcast.

Defendant argues that this fact is relevant because plaintiff suffered no injury as his image was not broadcast. In this, he is mistaken. Plaintiff is claiming a violation of his procedural due process rights. He claims that he should not have been filmed (the alleged deprivation of liberty) without his consent first having been obtained (the due process). Under this argument, whether the film was aired is immaterial. The injury to plaintiff occurred at the time he was filmed without his consent. Thus, I will assume, to the extent that it is relevant, that plaintiff was indeed filmed and that his image was broadcast.

### IV. *Violation of a Federal Statutory or Constitutional Right*

As discussed above, plaintiff must prove the existence of a deprivation of a right guaranteed him by federal statutory or constitutional law. Liberally construing his pleading, as I must with a *pro se* litigant, it appears that there are two possible constitutional rights on which he may attempt to rest his claim. He could be claiming a violation of his substantive right to privacy, arising out of the "liberty" provision of the fourteenth amendment due process clause. Also, plaintiff clearly

claims that defendant violated an administrative directive regarding inmate consent to filming. For the violation of this directive to state a cause of action under § 1983, it must create a protected liberty interest.

### A. *Substantive Right to Privacy*

#### 1. *No Fourth Amendment Right*

■ At one time, there was authority for the proposition that filming plaintiff somehow violated his fourth amendment right to be free from unreasonable searches and seizures.[3] In *Smith v. Fairman*, 98 F.R.D. 445 (C.D.Ill.1982), the district court refused to grant a prison warden summary judgment, when the plaintiff claimed a violation of his right to privacy by the warden's allowing the media to film him in his cell without his consent. The court balanced the security interest advanced against the inmate's reasonable expectation of privacy. The court found no legitimate security interest, and therefore found that the inmate's legitimate and reasonable expectation of privacy, admittedly slight, carried the day. However, since this time, the Supreme Court has held that prisoners retain no legitimate expectation of privacy in their cells for fourth amendment purposes. *Hudson v. Palmer*, 468 U.S. 517, 526, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984). If there is no legitimate expectation of privacy in an inmate's cell, surely there is no such legitimate expectation in a public corridor in a prison. Thus, plaintiff cannot state a claim for violation of his fourth amendment rights.

#### 2. *Fourteenth Amendment Right Does Not Encompass Plaintiff's Claim*

■ There is no doubt that the fourteenth amendment implicitly includes a privacy right. There are two different types of rights that have been considered privacy rights protected by the Constitution. First, there is the right to be free from interference in making certain kinds of important decisions. Second, there is the interest in

**3.** It is, of course, hornbook law that the fourth amendment applies to the states through the fourteenth amendment.

avoiding disclosure of personal matters. *Whalen v. Roe,* 429 U.S. 589, 599–600, 97 S.Ct. 869, 876–877, 51 L.Ed.2d 64 (1977). It is this second interest which may be implicated by plaintiff's complaint.

### a. *Not Every Disclosure Creates a Constitutional Violation*

Not every tort committed by an individual acting under color of state law creates a cause of action under § 1983. *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1975). The tort must be a violation of federal or constitutional law. As there is no federal law of privacy, plaintiff must claim a violation of the constitutional right of privacy.

"The constitutional right of privacy is not to be equated with the common law right recognized by state tort law. Thus far only the most intimate phases of personal life have been held to be constitutionally protected." *McNally v. Pulitzer Publishing Co.,* 532 F.2d 69, 76 (8th Cir.1976), *cert. denied,* 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976). *See also De Lesline v. State,* 91 A.D.2d 785, 458 N.Y.S.2d 79, 80 (1982).

This view has also been held in this district. In *Mimms v. Philadelphia Newspapers, Inc.,* 352 F.Supp. 862 (E.D.Pa.1972), Judge Becker held that a prison inmate's claim based on facts very similar to the present case did not state a cause of action under § 1983. In *Mimms,* the newspaper had printed a photograph of the plaintiff with the caption "PRISONERS WALK OVER US ABOUT HALF THE TIME." While this act was a violation of the inmate's privacy, it was not the type of violation which rises to the level of a constitutional violation. This case was distinguished from a case where police officers took nude photographs of an assault victim and distributed them for their own amusement. Only when the interference is with the most private aspects of the individual's life does a constitutional violation exist.

### b. *Nothing "Personal" Was Revealed*

Independent research has revealed [4] several cases which found that the constitutional right to privacy was violated. Each case, however, involved the disclosure of intimate or personal facts. *E.g., Best v. District of Columbia,* 743 F.Supp. 44 (D.D.C.1990) (plaintiffs' constitutional rights to privacy were violated when they were videotaped without their consent while cuffed and chained). *Cf., Huskey v. Nat'l Broadcasting Co.,* 632 F.Supp. 1282 (N.D.Ill.1986) (Illinois tort law was violated when plaintiff inmate was videotaped while wearing only shorts in an exercise cage).

### c. *Only Public Facts Were Revealed*

Plaintiff does not argue that private facts were revealed. At the most, he argues that the fact that was revealed is that he was incarcerated. But this fact is a matter of public record. Therefore, its revelation does not implicate the constitutional right to privacy. *Paul v. Davis,* 424 U.S. 693, 712–13, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1975) (publication of the official act of an arrest does not implicate constitutional privacy interest); *Scheetz v. The Morning Call, Inc.,* 946 F.2d 202, 207 (3rd Cir.1991) (information in police report is not protected by constitutional right to privacy); *McNally v. Pulitzer Publishing Co.,* 532 F.2d 69, 77–78 (8th Cir.1976) (publication of quotes from a psychiatric report does not violate privacy right when enough of the report has already been made public).

Even accepting every fact that plaintiff alleges as true, he does not state a cause of action for deprivation of his constitutional right of privacy. Even if he was filmed in the prison corridor, while going to get his mail, and even if that film was broadcast,

---

**4.** Plaintiff relies on two cases, *Hillery v. Procunier,* 364 F.Supp. 196 (N.D.Cal.1973) and *Washington Post Co. v. Kleindienst,* 357 F.Supp. 770 (D.D.C.1972). *Hillery* was a first amendment case which involved a statute which prohibited individual interviews with inmates, even when the inmate wanted the interview. This is irrelevant to the case at bar, where the plaintiff wants his privacy. Additionally, *Hillery* was vacated by the Supreme Court *sub nom Pell v. Pecunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). *Kleindienst,* which discussed a similar statute, met a similar fate, and was reversed *sub nom Saxbe v. Washington Post Co.,* 417 U.S. 843, 94 S.Ct. 2811, 41 L.Ed.2d 514 (1974).

all as he alleges, no revelation of private facts or information has occurred. Indeed, all that has been revealed to the public are facts which are already public, that plaintiff has been convicted and is incarcerated in a state penitentiary.

### B. *Procedural Due Process*

■ This is not the end of our inquiry, however. Plaintiff argues that the Bureau of Corrections' Administrative Directive governing news media relations creates a protected liberty interest. He argues that the language in the statute which mandates obtaining an inmate's consent before he is individually filmed creates a reasonable expectation that he will not be filmed without his written consent being obtained. There is no dispute that plaintiff's written consent was not obtained.

The relevant language in the directive is found in BCADM 009, section VI.E. It provides that film and video "shots taken where individual inmates will be recognizable shall be permitted only with written consent of the subject inmate or inmates.... The Bureau Waiver Form ... shall be used to obtain the inmate's consent." This does appear to be the type of mandatory language, similar to that at issue in *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), which can give rise to a liberty interest.

However, the directive goes on to provide, in section XII, that

> [t]his directive sets out policy and procedure. It does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. The directive should be interpreted to have sufficient flexibility so as to be consistent with law and to permit the accomplish-

ment of the purpose of the directives and policies of the Bureau of Correction.

This language clearly states that, despite the mandatory language used above, the directive is not intended to create any rights. Thus an inmate is on notice that any expectation he acquires as a result of the directive is not reasonable, because the directive is merely a statement of policy and procedure. Additionally, the language providing for flexible interpretation of the directive undermines any implication of the establishment of rights which the mandatory language may have created. Mandatory language which is to be interpreted in a flexible manner loses much of its mandatory quality. Given this, I find that the statute does not create a liberty interest.[5]

### C. *No Effect on Plaintiff's Tort Claim*

While plaintiff does not state a claim under § 1983, he may have stated a tort claim under the state law of Pennsylvania. Such a case would have no federal overtones, and therefore should litigated, if at all,[6] in state court. To the extent that plaintiff's complaint includes state law causes of action, I decline to exercise pendent jurisdiction over them, and will therefore dismiss them, as all federal claims have been terminated before trial. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

### V. *Conclusion*

Plaintiff's claims do not state a violation of federal law. Therefore, he cannot state a claim under 42 U.S.C. § 1983. Defendant's motion for summary judgment will be granted.

---

**5.** In this, the directive is similar to that at issue in *Williams v. Kyler,* 680 F.Supp. 172 (M.D.Pa. 1986), *aff'd,* 845 F.2d 1019 (1988). The directive combined mandatory language with a "disclaimer" stating that no rights were created. Given the ambiguity created by this combination of language, the court declined to find that substantive rights were created by the directive. Absent a clear expression of intent to create

substantive rights, the court found that none were created. *Id.* at 173.

**6.** To state a claim under Pennsylvania privacy law, plaintiff must prove that the intrusion or disclosure would be highly offensive to a reasonable person. *Harris v. Easton Publishing Co.,* 335 Pa.Super. 141, 483 A.2d 1377, 1383–84 (1984).