658 A.2d 375

**Charles E. JOHNSON, Appellant,**

v.

**David DESMOND, Robert Shearer, William Kelly, Harry Randall, Jim Eiseworth, Appellees.**

Superior Court of Pennsylvania.

Submitted Dec. 12, 1994.

Filed April 28, 1995.

Charles E. Johnson, appellant, pro se.

R. Matthew Patch, Williamsport, for Desmond, Shearer, Kelly and Randall, appellees.

Jim Eiseworth, appellee, pro se.

Before WIEAND, HUDOCK and HESTER, JJ.

WIEAND, Judge:

In this action brought pursuant to 42 U.S.C. § 1983 to recover damages for an alleged violation of plaintiff's federal constitutional rights to be free from cruel and unusual punishment and to equal protection of the law, the trial court entered summary judgment in favor of the defendant-correctional

officers. After careful review, we reverse and remand for further proceedings.

On October 30, 1989, Charles Johnson was an inmate at the Lycoming County Prison. While asleep in his cell, he was awakened by William Kelly, a correctional officer, who shook and banged upon the cell gate and ordered Johnson out of bed. When Johnson reached the front of his cell, he turned around because of a noise behind him and saw a person emerge from under his bed covered with a white sheet. After Johnson had registered fright, he said, Jim Eiswerth,[1] another correctional officer, removed the sheet from his person and left the cellblock with Kelly. Both correctional officers were then laughing, and, later, other corrections officers also joked about the incident.

Johnson filed pro se an action alleging that his civil rights had been violated. Although preliminary objections effected a dismissal of the action as to additional corrections officers, the action against Kelly and Eiswerth was allowed to continue, and Johnson was directed to file an amended complaint. After an amended complaint had been filed and Johnson's depositions had been taken, Kelly and Eiswerth filed a motion for summary judgment. The trial court granted this motion, holding that there had been no violation of Johnson's rights under the Constitution.

■ Appellant's first contention is that the trial court should have appointed counsel to represent him. In actions brought in the federal courts, counsel has occasionally been appointed to represent an indigent prisoner having a meritorious civil rights claim. The authority for such appointment has been found in 28 U.S.C. § 1915(d). See: *Hodge v. Police Officers,* 802 F.2d 58 (2d Cir.1986); *Pugh v. Locke,* 406 F.Supp. 318 (M.D.Ala.1976), *affirmed and modified on other grounds sub nom., Newman v. Alabama,* 559 F.2d 283 (5th Cir.1977), *cert. denied,* 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978). This statute, however, has no applicability to the

---

1. The record shows "Eiswerth", not Eiseworth, as the correct spelling of defendant-appellee's surname.

state courts. There is no authority in this Commonwealth for the appointment of counsel to represent parties in civil actions. See: *Weir v. Weir*, 428 Pa.Super. 515, 528, 631 A.2d 650, 656 (1993) (reviewing Pennsylvania law and recognizing right to counsel in dependency hearings, proceedings to terminate parental rights and involuntary civil commitment proceedings). The trial court did not err by failing to appoint counsel to represent Johnson in this civil action.

■ In order to state a valid claim under 42 U.S.C. § 1983, a party must establish two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Oatess v. Norris*, 431 Pa.Super. 599, 602, 637 A.2d 627, 629 (1994), citing *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420, 428 (1981). In this case, the first element is satisfied because the conduct complained of was committed by two state prison guards acting while employed to watch over the plaintiff-prisoner.

■ The Fourth Amendment of the United States Constitution protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." However, the United States Supreme Court determined that the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell because the recognition of privacy rights for prisoners in their individual cells cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions. *Hudson v. Palmer*, 468 U.S. 517, 526, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393, 402–403 (1984). Thus, even under the unusual circumstances of this case, the entry of appellant's cell by the corrections officers would not constitute a violation of the Fourth Amendment. See: *Proudfoot v. Williams*, 803 F.Supp. 1048, 1051 (E.D.Pa.1992).

In *Hudson v. Palmer, supra*, the Supreme Court said that while a prisoner's Fourth Amendment rights are curtailed, the

Eighth Amendment of the United States Constitution may provide a remedy for calculated harassment unrelated to prison needs. *Id.* at 530, 104 S.Ct. at 3202, 82 L.Ed.2d at 405. See also: *Proudfoot v. Williams, supra* at 1051 ("Searches [of prisoner's cell] can only rise to an Eighth Amendment violation when they are conducted for 'calculated harassment.' "). The Eighth Amendment protects against "cruel and unusual punishments," and is a concept of wide application. In *Commonwealth ex rel. Bryant v. Hendrick*, 444 Pa. 83, 280 A.2d 110 (1971), the Supreme Court of Pennsylvania said:

> Just what constitutes cruel and unusual punishment in the constitutional sense is a matter which defies concrete definition. However, it has long been understood that the concept of cruel and unusual punishment is one of wide application, capable of acquiring new depth of meaning to conform to more enlightened concepts of criminal justice. In *Trop v. Dulles*, 356 U.S. 86, 78 S.Ct. 590 [2 L.Ed.2d 630] (1958), the Supreme Court wrote: "The exact scope of the constitutional phrase 'cruel and unusual' has not been detailed by this Court. But the basic policy reflected in these words is firmly established in the Anglo–American tradition of criminal justice. The phrase in our Constitution was taken directly from the English Declaration of Rights of 1688, and the principle it represents can be traced back to the Magna Carta. **The basic concept underlying the Eighth Amendment is nothing less than the dignity of man.** While the State has the power to punish, the Amendment stands to assure that this power be exercised within the limits of civilized standards.... The Court recognized in [*Weems v. United States*, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910) ] that case that the words of the Amendment are not precise, and that their scope is not static. The Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." [Footnotes omitted.] [Emphasis supplied.] *Id.* [356 U.S.] at 99–101, 78 S.Ct. [at] 597, 598.

*Id.* 444 Pa. at 95, 280 A.2d at 116. Underpinning the entire body of Eighth Amendment jurisprudence is the "dignity of

man." *Id.* "Intentional harassment of even the most hardened criminals cannot be tolerated by a civil society." *Hudson v. Palmer, supra* at 528, 104 S.Ct. at 3201, 82 L.Ed.2d at 404.

Not every wrong rises to the level of a constitutional violation. The Civil Rights Act does not seek to redress every injury which might be actionable under a state or common law tort remedy. *Ricketts v. Derello,* 574 F.Supp. 645, 646 (E.D.Pa.1983). See also: *Hudson v. Palmer, supra* at 530, 104 S.Ct. at 3202, 82 L.Ed.2d at 405; *Ingraham v. Wright,* 430 U.S. 651, 670, 97 S.Ct. 1401, 1412, 51 L.Ed.2d 711, 729 (1977) (violation of prisoner's Eighth Amendment rights must involve the unnecessary and wanton infliction of pain); *Black Spotted Horse v. Else,* 767 F.2d 516, 517 (8th Cir.1985) (allegation that prison guard caused relatively minor injury to prisoner's leg, poked him in back, and spoke in belligerent tone may amount to battery under state law, but failed to state claim under the Eighth Amendment); *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973) (although a complainant may have a cause of action in battery, not every unnecessary push or shove violates a prisoner's constitutional rights); *Merritt–Bey v. Salts,* 747 F.Supp. 536 (E.D.Mo.1990), *affirmed,* 938 F.2d 187 (8th Cir. 1991) (no constitutional violation where female guard remarked to male prisoner during authorized strip search, "So, it's not true what they say about blacks anyway."); *Wright v. Santoro,* 714 F.Supp. 665 (S.D.N.Y.1989), *affirmed,* 891 F.2d 278 (2d Cir.1989) (no constitutional violation where guard remarked to prisoner, "Get your black ass out of my office" and "I'll lock your black ass up.").

An Eighth Amendment violation was found to exist, however, where prisoners, because of their race, were treated differently for purposes of administering an established prison work program. See: *Brown v. Sumner,* 701 F.Supp. 762 (D.Nev. 1988). An Eighth Amendment violation was also found in *Pugh v. Locke, supra,* 406 F.Supp. 318, where a class of prisoners had been subjected to grossly unsanitary conditions, without opportunity for exercise and recreation, and for whom inadequate medical care had been provided. The potential for an Eighth Amendment violation was found where a prisoner

admittedly suffered no physical contact or physical injuries, but was frightened and sought psychiatric counseling, after a guard in the kitchen allegedly had drawn the blade of a knife across another prisoner's hand, causing bleeding, and thereafter turned to the complainant and asked "you want some of this too?" *Smith v. Aldingers*, 999 F.2d 109 (5th Cir.1993).

■ It is true, as appellees argue, that appellant does not contend that he was touched by the correctional officers during their masquerade. Nevertheless, we conclude that appellant's testimony is sufficient, if believed, to demonstrate an attempt to harass and inflict emotional distress upon him in violation of his Eighth Amendment right to be free of cruel and unusual punishment. Where an Afro–American prisoner is awakened from his nighttime sleep and summoned by a guard to the front of his cell so that another guard, in a white sheet, perhaps suggestive of Ku Klux Klan activity, can approach from behind and frighten the prisoner, such conduct could be found by a jury to exceed the limits of civilized standards and constitute harassment in violation of the Eighth Amendment guarantee against cruel and unusual punishment.

It also suggests unequal treatment of plaintiff because of his race and, therefore, may constitute a violation of the Fourteenth Amendment guarantee of equal protection under the law. See: *Thomas v. Brierley*, 481 F.2d 660 (3rd Cir.1973) (refusal to allow visitors because of prisoner's race violates the equal protection clause of Fourteenth Amendment). See also: *Burton v. Livingston*, 791 F.2d 97, 100 (8th Cir.1986) (prisoner retains right to be free from terror of instant and unexpected death at whim of allegedly bigoted custodians).

■ It may be that ultimately a jury will find the guards' conduct to be an innocent Halloween prank. See: *Wyatt v. Delaney*, 818 F.2d 21, 24 (8th Cir.1987) (fact finder should consider extent of emotional injury, even though injury was intentionally caused and was not for purpose of prison security, and could conclude injury was only "bruised feelings" and thus *de minimis* under federal law). At the present time, however, it cannot be said finally and as a matter of law that

prison personnel did not act intentionally and maliciously to inflict cruel and unusual punishment upon appellant because of his race. Therefore, it was error for the trial court to enter summary judgment in favor of the guards. In ruling upon a motion for summary judgment, a court must examine the record in a light most favorable to the non-moving party, and any doubt must be resolved against the moving party. *Oatess v. Norris, supra,* 431 Pa.Super. 599, 637 A.2d 627.

Reversed and remanded for further proceedings consistent with the foregoing opinion. Jurisdiction is not retained.