Robert DeBLASIO and Deborah
McFadden, Appellants

v.

Joseph PIGNOLI, Mayor of West Con-
shohocken and Borough of West
Conshohocken and Borough of West
Conshohocken Police Department
and Joseph G. Clayborne, Chief of
Police and Joseph P. Pignoli, Jr.

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 2006.

Decided March 12, 2007.

ough's Police Department. Plaintiffs aver Joseph Pignoli, the Borough's Mayor, Joseph G. Clayborne, the Borough's Chief of Police, and Joseph Pignoli, Jr., a Borough Council Member (collectively, Defendants) invaded their privacy by negligently permitting the monitoring of the police department's holding cells from the mayor's home. We affirm the trial court's dismissal of Plaintiffs' complaint.

In November 2002, the police detained Plaintiffs in its holding cells. Video cameras monitored the cells. Plaintiffs later discovered the mayor uses the cameras to monitor detainees from his home.

Consequently, Plaintiffs filed a second amended complaint,[1] averring:

9. The Plaintiffs' [sic] acknowledge the purpose of the video surveillance with the police facility to insure [sic] the safety of those incarcerated and the duty of the police personnel to carry out such tasks in a professional manner.

\* \* \*

13. [Defendants] violated the privacy of [Plaintiffs], in establishing, maintaining and/or neglecting to disconnect the surveillance monitors at the personal home of [the mayor].

14. In such a violation of privacy, [Plaintiffs] suffered humiliation, injuries and damages.

\* \* \*

17. Defendants jointly conspired to install and/or maintain and/or permit the home monitoring system, abusing the official positions they held to perpetrate the invasion of those incarcerated at the facility.

Philip J. Berg, Lafayette Hill, for appellants.

Michael T. Taylor, Chester Springs, for appellees.

BEFORE: SIMPSON, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

Robert DeBlasio and Deborah McFadden (Plaintiffs), former detainees, appeal an order of the Montgomery County Court of Common Pleas (trial court) that dismissed their complaint against the Borough of West Conshohocken and the Bor-

---

1. Plaintiffs filed their original complaint with the trial court averring violation of privacy and of federal substantive due process and civil rights protections. As a result, the case was removed to federal court. Pursuant to a federal court order, Plaintiffs filed a second amended complaint. Because this complaint no longer alleged substantive due process and civil rights violations, the federal court remanded the case to the trial court.

18. At the very least, some of the Defendants were negligent in the performance of their duties in not having discovered the set up or having been made aware of it, not having reported the same.

\* \* \*

21. [Defendants] acted in bad faith in establishing and maintaining surveillance cameras in the cells of [Plaintiffs]. 22. [Defendants] conspired to disparage and humiliate [Plaintiffs] by invading their privacy at the home of [Mayor].

Reproduced Record at 14a–16a.

In response, the borough and the police department filed preliminary objections in the nature of a demurrer. They argued Plaintiffs' second amended complaint failed to state a cause of action for any privacy tort or a claim for conspiracy. In addition, they asserted Plaintiffs' complaint was barred by what is commonly called the Political Subdivision Tort Claims Act (Act), 42 Pa.C.S. §§ 8541–42.

Ultimately, the trial court determined Plaintiffs too generally pled an invasion of privacy claim, and even if properly pled, the theory failed because Plaintiffs did not have an expectation of privacy while in the holding cells. The trial court dismissed the conspiracy claim because Plaintiffs failed to plead the alleged unlawful act of invasion of privacy. The trial court further concluded the borough and the police department were immune from negligence liability under the Act.

■■■ On appeal to this Court,[2] Plaintiffs argue the mayor's monitoring constitutes an invasion of privacy that publicized private facts of a type highly offensive to a reasonable person. Without citation to authority, Plaintiffs argue the monitoring is offensive because it is conducted from outside the police department, specifically, the mayor's home. Plaintiffs further aver Defendants conspired to invade their privacy.

■■■ An action for invasion of privacy is comprised of four distinct torts: (1) intrusion upon seclusion, (2) appropriation of name or likeness, (3) publicity given to private life, and (4) publicity placing the person in a false light. *Marks v. Bell Tel. Co. of Pa.*, 460 Pa. 73, 331 A.2d 424 (1975). Plaintiffs seem to mix and match these torts, but the only theory applicable to their second amended complaint is intrusion upon seclusion.[3] As explained in the Pennsylvania Standard Jury Instructions:

*One who intentionally intrudes*, physically or otherwise, *on the solitude or*

2. When considering the appropriateness of a ruling on preliminary objections, this Court must apply the same standard as the trial court. *Unified Sportsmen of Pa. v. Pa. Game Comm'n*, 903 A.2d 117 (Pa.Cmwlth.2006). Under this standard, the Court accepts as true all well-pled material facts set forth in the complaint along with all reasonably deducible inferences from those facts. *Id.* The question presented by a preliminary objection in the nature of a demurrer is whether, on the facts averred in the complaint, the law provides with certainty that no recovery is possible. *Id.* A preliminary objection must only be sustained to dismiss a complaint with prejudice if there does not appear to be any reasonable possibility that amendment of it would be successful. *Id.*

3. Plaintiffs argue Defendants gave publicity to a matter concerning their private life. Publicity means that a matter is made public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. *Harris by Harris v. Easton Publ'g Co.*, 335 Pa.Super. 141, 483 A.2d 1377 (1984). Here, Defendants allegedly maintained video cameras in holding cells. Plaintiffs only aver the *mayor* visually monitored the cells. Plaintiffs fail to aver Defendants communicated any information to anyone else; therefore, the publicity element is not met by the second amended complaint. We need not address the question of whether an adult loses "private life" status by arrest and detention.

*seclusion of another person, or the person's private affairs or concerns,* is responsible to the person for the harm suffered as a result of this invasion of privacy if a similar intrusion upon the solitude or seclusion or private affairs and concerns of a reasonable person would be highly offensive to that reasonable person.

\* \* \*

Conduct that is highly offensive to a reasonable person is conduct that a reasonable person, in similar circumstances, would find very objectionable or that a reasonable person in similar circumstances could be expected to take with serious offense.

Pa. SSJI (Civ. 13.12) (emphasis added). A defendant is liable for intrusion upon seclusion only when he *intrudes into a private place,* or otherwise invades a private seclusion about a plaintiff's person or affairs. *Harris by Harris v. Easton Publ'g Co.,* 335 Pa.Super. 141, 483 A.2d 1377 (1984).

Here, Plaintiffs aver the mayor could monitor them from his home while they were detained in holding cells equipped with surveillance cameras. However, regardless of the location of the viewer, the place being viewed was not private. Stated otherwise, a cell is a place where a detainee's privacy is lost. *Hudson v. Palmer,* 468 U.S. 517, 526, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) ("society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell"); *Johnson v. Desmond,* 441 Pa.Super. 632, 658 A.2d 375 (1995) (inmate had no reasonable expectation of privacy in his prison cell entitling him to protection of Fourth Amendment); *Thomas v. Holtz,*

707 A.2d 569 (Pa.Cmwlth.1998) (Pellegrini, Kelley, JJ., & Narick, S.J.) (prisoner has no reasonable expectation of privacy in his prison cell entitling him to protection against unreasonable searches; imprisonment carries with it the loss of many rights as being necessary to accommodate the institutional objective of prison facilities); *see Samson v. California,* —— U.S. ——, ——, 126 S.Ct. 2193, 2197, 165 L.Ed.2d 250 (2006) (prisoners have no reasonable expectation of privacy); *Willis v. Artuz,* 301 F.3d 65 (2d Cir.2002) (an inmate does not have a legitimate expectation of privacy in his prison cell); *Booth v. King,* 346 F.Supp.2d 751 (E.D.Pa.2004) (same); *Commonwealth v. Rathfon,* 705 A.2d 448 (Pa.Super.1997); *Commonwealth v. Boyd,* 397 Pa.Super. 468, 580 A.2d 393 (1990) (same); *Commonwealth, Dep't of Pub. Welfare, Fairview State Hosp. v. Kallinger,* 134 Pa.Cmwlth. 415, 580 A.2d 887 (1990) (Pellegrini, J.) (same). Thus, Plaintiffs' intentional intrusion upon "cell seclusion" claim fails, and the trial court properly dismissed the invasion of privacy claim.

We decline to follow the path suggested by the dissent, which relies on a federal district court case from Illinois, *Huskey v. National Broadcasting Co., Inc.,* 632 F.Supp. 1282 (N.D.Ill.1986).[4] Primarily, the prisoner in that case was not in his cell when he was videotaped for broadcast against his express wishes; rather, he was in another area of the prison, an "exercise cage." *Id.* at 1285. Not surprisingly, therefore, the district court did not discuss any expectation of privacy that prisoner had in his cell. As a result of this critical distinction, the district court did not need to reconcile its decision with the 1984 decision of the U.S. Supreme Court in *Hudson*

---

4. *Huskey* was not cited by the trial court, and it was not referenced by the parties. Indeed, it has never been followed in a reported opinion for the proposition that a prison inmate has reasonable seclusion expectations anywhere in a prison.

v. Palmer, which held there was no reasonable expectation of privacy in a prison cell. In contrast, this Court does not enjoy a similar luxury to avoid discussion of the long line of authority which started with *Hudson v. Palmer*.

■ As the numerous *Hudson v. Palmer* cases instruct, there are significant consequences in recognizing any privacy interest in a prison cell. Chief among these would be restrictions on the ability to enter, to search and to seize items and inmates from a cell. In this context, the Supreme Court's admonition that "society is not prepared to recognize as legitimate *any* subjective expectation of privacy that a prisoner might have in his prison cell" is an important statement of policy to which the majority adheres. 468 U.S. at 526, 104 S.Ct. 3194 (emphasis added).

■ As to the conspiracy theory, the trial court properly determined Plaintiffs failed to state a claim for conspiracy. To state a civil action for conspiracy, a complaint must allege: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or unlawful purpose; (2) an overt act done to further the common purpose, and (3) actual legal damage. *Pappert v. TAP Pharm. Prods. Inc.*, 868 A.2d 624 (Pa.Cmwlth.2005).

■ Here, Plaintiffs fail to plead a cause of action for invasion of privacy. As a result, Plaintiffs fail to state the underlying unlawful act required for a conspiracy

5. We also easily dispose of Plaintiffs' vague averments of negligence. Consistent with authority previously cited, both intrusion upon seclusion and conspiracy are intentional torts. Pa. SSJI (Civ. 13.12); *Pappert v. TAP Pharm. Prods. Inc.*, 868 A.2d 624 (Pa.Cmwlth.2005). Negligent acts are insufficient for these torts.

claim. Thus, the trial court properly sustained the demurrer to this claim as well.[5]

Accordingly, the trial court is affirmed.

### ORDER

AND NOW, this 12th day of March, 2007, the order of the Montgomery County Court of Common Pleas is **AFFIRMED.**

DISSENTING OPINION BY Senior Judge KELLEY.

I respectfully dissent.

As the Majority correctly notes, "[a]n action for invasion of privacy is comprised of four distinct torts: (1) intrusion upon seclusion, (2) appropriation of name or likeness, (3) publicity given to private life and (4) publicity placing the person in a false light. *Marks v. Bell Tel. Co. of Pa.*, 460 Pa. 73, 331 A.2d 424 (1975)." *Harris by Harris v. Easton Publishing Co.*, 335 Pa.Super. 141, 483 A.2d 1377, 1383 (1984). As the Majority also correctly notes, the only tort properly at issue in the Plaintiffs' second amended complaint in the instant case is "intrusion upon seclusion".

Section 652B of the Second Restatement of Torts states:

One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Moreover, Plaintiffs did not preserve in their Concise Statement of Matters Complained of on Appeal any issue relating to negligence averments. Reproduced Record at 71a–72a.

As a result of our holdings, we need not discuss the immunity issues.

Restatement (Second) of Torts § 652B (1977).

In addition, Comment a to Section 652B provides:

> The form of invasion of privacy covered by this Section does not depend upon any publicity given to the person whose interest is invaded or to his affairs. It consists solely of an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man.

*Id.,* cmt. a.

Moreover, as noted by the Pennsylvania Superior Court:

> The defendant is subject to liability under this section only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs. *Id.,* comment c; *Fogel v. Forbes, Inc.,* [500 F.Supp. 1081, 1087 (E.D.Pa.1980)]. There is also no liability unless the interference with the plaintiff's seclusion is substantial and would be highly offensive to the ordinary reasonable person. Restatement (Second) of Torts § 652B, comment d.

*Harris by Harris,* 483 A.2d at 1383–1384.

In affirming the trial court's order granting the Defendants' preliminary objections in this case, the Majority concludes that the Plaintiffs' intrusion upon seclusion claim fails because the holding cells are "[a] non-private place where a detainee does not seclude private concerns. Stated otherwise, a holding cell is a place where a detainee's privacy is lost. Thus, Plaintiffs' intentional intrusion upon 'cell seclusion' claim fails, and the trial court properly dismissed the invasion of privacy claim." Majority Opinion at 5–6 (citations omitted).

To the contrary, Plaintiffs maintained a reasonable expectation of seclusion while being detained in the Borough's holding cells. In *Huskey v. National Broadcasting Company, Inc.,* 632 F.Supp. 1282 (N.D.Ill.1986), a camera crew employed by the defendant filmed the plaintiff, an inmate, while visiting the federal prison at Marion, Illinois. The crew filmed the plaintiff while he was in the prison's exercise cage, and while he was wearing only gym shorts and exposing his distinctive tattoos. The plaintiff sued the defendant alleging, *inter alia,* that the defendant was liable on a common-law invasion of privacy claim. The defendant responded, *inter alia,* that its depiction of a person in a "publicly visible area" could not serve as the basis for an action for intrusion upon seclusion, and sought to have the action dismissed based upon the plaintiff's failure to state a cause of action for which relief could be granted under Fed.R.Civ.P. 12(b)(6).

In rejecting the defendant's assertion in this regard, the federal court stated the following, in pertinent part:

> Of course Huskey *could* be seen by guards, prison personnel and inmates, and obviously he was in fact seen by NBC's camera operator. But the mere fact a person can be seen by others does not mean that the person cannot legally be "secluded". Indeed, one paradigm case of the tort [of intrusion upon seclusion] is the Peeping Tom (see Restatement § 625B comment b, illustration 2). Further, Huskey's visibility to some people does not strip him of the right to remain secluded from others. Persons are exposed to family members and invited guests in their own homes, but that does not mean they have opened the door to television cameras. Prisons are largely closed systems, within which prisoners may become understandably

inured to the gaze of staff and other prisoners, while at the same time feeling justifiably secluded from the outside world (at least in certain areas not normally visited by outsiders). . . .

No case has been cited to this Court (or discovered by independent research) holding that *no* area of seclusion exists within a prison as a matter of law. Whether or not the exercise cage could be considered such an area is a factual question. Huskey's complaint says he was not in public view and he expressly disapproved of the effort to film him. That is enough for Rule 12(b)(6) purposes.

But NBC goes on to argue it cannot be held liable for intrusion upon Huskey's seclusion because such liability exists only (Restatement § 652B):

if the intrusion would be highly offensive to a reasonable person.

And NBC says its actions, as a matter of law, cannot be deemed "highly offensive to a reasonable person". . . .

[H]owever, there is support for the view that merely photographing a person at home without his or her permission is objectionable enough to state a claim (see *Dietemann v. Time, Inc.*, 449 F.2d 245, 249 (9th Cir.1971)). Indeed, the degree to which NBC's actions were objectionable must in large part depend on the degree to which Huskey was secluded while in the exercise cage. And that also cannot be decided at the pleading stage.

*Huskey*, 632 F.Supp. at 1287–1289 (emphasis in original and footnotes omitted).[1]

In the second amended complaint filed in this case, Plaintiffs alleged the following, in pertinent part:

8. On or about November 18, 2002, [Plaintiffs] were prisoners in the custody of Defendants [Borough, Borough Police Department and Chief of Police] ... when they discovered in their respective cells cameras positioned to observe them.

9. The Plaintiffs' acknowledge the purpose of video surveillance within the police facility to insure the safety of those incarcerated and the duty of the police personnel to carry out such tasks in a professional manner.

10. Plaintiffs' discovery that the monitors were also active at the home of the Defendant [Mayor] was a violation of the intent of the surveillance, an invasion of the privacy of the Plaintiffs', an abuse of office by those who had knowledge of the same or negligence on the part of those who should have known of this impropriety and failed to correct the same.

11. Defendants, [Mayor and Borough Council Member] were instrumental in establishing and maintaining said cameras and monitors, at the Defendant [Borough Police Department], and at the home of the Defendant [Mayor], all in violation of the rights of the Plaintiffs' right of privacy and an abuse of office and of duty of those who either had knowledge or should have had knowledge of the in home monitoring system.

\* \* \*

13. The Defendants violated the privacy of the Plaintiffs ... in establishing, maintaining and/or neglecting to disconnect the surveillance monitors at the personal home of the Defendant [Mayor].

---

**1.** *But cf. Jones/Seymour v. LeFebvre*, 781 F.Supp. 355 (E.D.Pa.1991), *aff'd*, 961 F.2d 1567 (1992) (The nonconsensual filming of an inmate walking down a prison corridor does not support a cause of action under 42 U.S.C. § 1983.).

14. In such a violation of privacy, Plaintiffs ... suffered humiliation, injuries and damages.

Reproduced Record (RR) at 13a–15a.

Thus, as acknowledged by Plaintiffs in their complaint, they had a reasonable expectation that video surveillance would be conducted at the Police Department in which they were housed "[t]o insure the safety of those incarcerated and the duty of the police personnel to carry out such tasks in a professional manner. . . ." RR at 14a. Indeed, as noted above, "[p]risons are largely closed systems, within which prisoners may become understandably inured to the gaze of staff and other prisoners, while at the same time feeling justifiably secluded from the outside world (at least in certain areas not normally visited by outsiders). . . ." *Huskey,* 632 F.Supp. at 1288.

However, contrary to the Majority's determination in this case[2], I believe that Plaintiffs have sufficiently alleged that Defendants intruded upon their reasonable expectation of solitude in the holding cells by maintaining a video monitor outside the confines of the Police Department, and that such intrusion was highly offensive to them. *See, e.g.,* Restatement (Second) of Torts § 652B ("One who intentionally intrudes . . . upon the solitude or seclusion of another . . . is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."); *Huskey.* At a minimum, I am convinced that the intrusion upon seclusion claim raised Plaintiffs' second amended complaint should not have been dismissed by preliminary objection. *Id.* at 1288–1289 ("[H]uskey's complaint

says he was not in public view and he expressly disapproved of the effort to film him. That is enough for Rule 12(b)(6) purposes. . . . [Further, t]he degree to which NBC's actions were objectionable must in large part depend on the degree to which Huskey was secluded while in the exercise cage. And that also cannot be decided at the pleading stage."). *See also Lattany v. Four Unknown U.S. Marshals,* 845 F.Supp. 262, 266 (E.D.Pa.1994) ("[T]he plaintiff contends that the Marshals violated his constitutional right to privacy by photographing him without permission and without a law enforcement justification. In *Best v. District of Columbia,* 743 F.Supp. 44 (D.D.C.1990), the court denied defendants' motion to dismiss or for summary judgment against a complaint by prisoners that they were videotaped while chained and handcuffed during transportation between prisons. The court found that the prisoners' privacy rights were violated regardless of whether the film was ever publicly disclosed. *Id.* at 48. As the Supreme Court has recognized, '[i]nmates in jails, prisons or mental institutions retain certain fundamental rights of privacy: they are not like animals in a zoo to be filmed and photographed at will by the public or by media reporters, however "educational" the process may be for others.' *Houchins v. KQED, Inc.,* 438 U.S. 1, 5 n. 2, 98 S.Ct. 2588, 57 L.Ed.2d 553 [(1978)]. I find that the allegations in the instant case are substantially similar to the facts of *Best.* The allegations in the plaintiff's complaint raise the same concern for individual dignity which the Supreme Court and *Best* court recognized. The plaintiff and other prisoners were photographed against their opposition while handcuffed

---

**2.** The Majority's attempt to distinguish *Huskey* on the basis that the prisoner therein was taped while in an "exercise cage", and not his cell, is mere sophistry. Clearly, the court in *Huskey* recognized that a prisoner may justifiably feel secluded from the outside world in all areas of a prison not normally visited by outsiders, which would include both the "exercise cage" and the individual prisoners' cells.

and in custody. Absent any law enforcement rationale for the photographs, which from the allegations I can infer none, the Marshals' alleged actions were nothing more than a personal frolic, falling within the ambit of *Houchins*.") (footnote omitted).[3]

3. The Majority's reliance upon authority involving the application of the Fourth Amendment to the United States Constitution to support the dismissal of a claim arising under the common law tort of intrusion upon seclusion, most notably *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), is misplaced. It is true that claims arising under either the Fourth Amendment or the tort of intrusion upon seclusion involve a violation of one's right of privacy. *See, e.g., In re Asia Global Crossing, Ltd.*, 322 B.R. 247 (Bankr. S.D.N.Y.2005) ("[A] right of privacy is recognized under both the common law, *see* Restatement (Second) of Torts 652B (1977) (discussing the tort of 'intrusion upon seclusion'), and the Fourth Amendment to the United States Constitution. In both cases, the aggrieved party must show a reasonable expectation of privacy.") (citations omitted).

However, claims raised under these disparate provisions are distinct in kind and are not mutually exclusive. For example, in *Jones/Seymour*, an inmate at the Pennsylvania Correctional Institution at Graterford was filmed by a television crew while walking down the main corridor in the prison. The inmate alleged that he was filmed without his consent. As a result, the inmate filed an action in federal court pursuant to 42 U.S.C. § 1983 in which he alleged that the filming violated his right to privacy under the Fourth and Fourteenth Amendments. In granting a motion for summary judgment, the court stated the following, in pertinent part:

While plaintiff does not state a claim under § 1983, he may have stated a tort claim under the state law of Pennsylvania. Such a case would have no federal overtones, and therefore should be litigated, if at all, in state court.[6] To the extent that plaintiff's complaint includes state law causes of action, I decline to exercise pendent jurisdiction over them, and will therefore dismiss them, as all federal claims have been terminated before trial.
* * *
6. To state a claim under Pennsylvania privacy law, plaintiff must prove that the intrusion or disclosure would be highly offensive to a reasonable person. [*Harris by Harris*].

*Jones/Seymour*, 781 F.Supp. at 359 (citation omitted). *See also Mimms v. Philadelphia Newspapers, Inc.*, 352 F.Supp. 862 (E.D.Pa. 1972) (Unwanted but nonegregious publicity may be an actionable invasion of privacy under Pennsylvania law even though it does not support a claim under 42 U.S.C. § 1983). Thus, the fact that Plaintiffs may not be able to maintain an action based upon a Fourth or Fourteenth Amendment violation does not compel the conclusion that they may not maintain an action based on the common law tort of intrusion upon seclusion as well.

Moreover, and quite importantly, it is questionable whether or not *Hudson* and its progeny apply to pretrial detainees such as Plaintiffs in the first instance. *See, e.g., State v. Andujar*, 899 A.2d 1209 (2006), wherein the Rhode Island Supreme Court noted the following, in pertinent part:

The precise issue before this Court, then, is whether either article 1, section 6 [of the Rhode Island Constitution], or the Fourth Amendment confers upon a pretrial detainee a legitimate expectation of privacy in his or her cell, especially when competent evidence suggests that he or she may be engaged in serious criminal activity in that cell. We are cognizant that Hudson left unanswered the question of whether a *pretrial detainee* should retain any legitimate expectation of privacy in his or her cell. A review of the post-*Hudson* decisions from various jurisdictions reveals a sharp split of opinion on this point.

A spattering of jurisdictions has found that a pretrial detainee *does* retain a legitimate expectation of privacy in his or her cell in the wake of *Hudson*, especially when the prosecution orders the search for the sole purpose of collecting evidence. *See, e.g., United States v. Cohen*, 796 F.2d 20, 22–24 (2d Cir.1986); *McCoy v. State*, 639 So.2d 163, 167 (Fla.Dist.Ct.App.1994); *Lowe v. State*, 203 Ga.App. 277, 416 S.E.2d 750, 752 (1992); *State v. Jackson*, 321 N.J.Super. 365, 729 A.2d 55, 63–65 (Law Div.1999).

A number of jurisdictions disagree, however, interpreting *Hudson* to hold that a pretrial detainee has no legitimate expectation of privacy in his or her prison cell, without regard for the purpose motivating

In addition, Plaintiffs alleged the following in Counts II and III of their second amended complaint:

17. Defendants jointly conspired to install and/or maintain and/or permit the home monitoring system, abusing the official positions they held to perpetrate the invasion of those incarcerated in the facility.

18. At the very least, some of the Defendants were negligent in the performance of their duties in not having discovered the set up or having been made aware of it, not having reported the same.

\* \* \*

22. Defendants, [Borough], [Mayor], [Borough Police Department], [Chief of Police], and [Borough Council Member], conspired to disparage and humiliate the Plaintiffs by invading their privacy at the home of the Defendant [Mayor].

RR at 15a, 16a.

As the Majority correctly notes, to state civil action for conspiracy, a complaint must allege: (1) combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) overt act done in pursuance of common purpose; and (3) actual legal damage. *McKeeman v. Corestates Bank, N.A.,* 751 A.2d 655 (Pa.Super.2000). In affirming the trial court's grant of preliminary objections dismissing the conspiracy claims raised by Plaintiffs, the Majority stated that "[h]ere, Plaintiffs fail to plead a cause of action for invasion of privacy. As a result, Plaintiffs fail to state the underlying unlawful act required for a conspiracy claim...." Majority Opinion at 826. *See, e.g., McKeeman,* 751 A.2d at 660 ("[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act.").

However, as outlined above, Plaintiffs did sufficiently state a cause of action for the tort of intrusion upon seclusion. As a result, I also believe that the Majority erred in affirming the trial court's order in this regard as well. Based on the foregoing, I would reverse the trial court's order granting the preliminary objections in the nature of a demurrer and dismissing Plaintiffs' second amended complaint with prejudice.[45]

the initial search. *See, e.g., State v. Apelt,* 176 Ariz. 349, 861 P.2d 634, 639 (1993); *People v. Davis,* 36 Cal.4th 510, 31 Cal. Rptr.3d 96, 115 P.3d 417, 429 (2005); *State v. Bolin,* 693 So.2d 583, 585 (Fla.Dist.Ct. App.1997), *rev'd on other grounds,* 793 So.2d 894 (Fla.2001); *State v. O'Rourke,* 792 A.2d 262, 267 (Me.2001); *People v. Phillips,* 219 Mich.App. 159, 555 N.W.2d 742, 743–44 (1996); *State v. Martin,* 322 N.C. 229, 367 S.E.2d 618, 621–22 (1988). We agree with those jurisdictions that interpret Hudson to leave no room for any legitimate expectation of privacy for pretrial detainees regardless of the purpose motivating the search....
*Andujar,* 899 A.2d at 1224 (emphasis in original).

4. As noted above, Plaintiffs also alleged that "[D]efendants were negligent in the performance of their duties in not having discovered the set up or having been made aware of it, not having reported the same ...." RR at 15a. In disposing of these negligence claims, the Majority tersely states that "[c]onsistent with authority previously cited, both intrusion upon seclusion and conspiracy are intentional torts. Negligent acts are insufficient for these torts. Moreover, Plaintiffs did not preserve in their Concise Statement of Matters Complained of on Appeal any issue relating to negligence averments. Reproduced Record [(RR)] at 71a–72a." Majority Opinion at 826, n. 5.

However, the concise statement filed by Plaintiffs specifically references the "abuse of authority ... by those who had approved, installed and maintained that home-monitoring system ...." RR at 72a. In addition, in its opinion, the trial court specifically references the negligence claims raised by Plaintiffs in the second amended complaint, and

**832**

Accordingly, unlike the Majority, I would reverse the trial court's order in this case.

specifically discusses the application of the provisions of the Judicial Code relating to liability for the negligent acts of the Borough and its employees. *See* RR at 74a, 75a–76a. As a result, the issues relating to the negligence claims have not been waived for purposes of appeal.

5. Finally, in its opinion, the Majority also states that "[a]s a result of our holdings, we need not discuss the immunity issues." Majority Opinion at 826, n. 5. With respect to the negligence claims against the Borough and the Borough Police Department, Section 8542(b)(3) of the Judicial Code, 42 Pa.C.S. § 8542(b)(3) provides that the Borough may be held liable for claims relating to "[t]he care, custody or control of real property in the possession of the local agency...." As the instant negligence claims relate to the video surveillance system installed in the Borough's Police Department, the instant claims fall within the exception provided for in Section 8542(b)(3) of the Judicial Code. *See, e.g., Cureton ex rel. Cannon v. Philadelphia School District*, 798 A.2d 279 (Pa.Cmwlth.2002), *petition for allowance of appeal denied*, 573 Pa. 666, 820 A.2d 704 (2003) (A scroll saw that was physically connected to the realty and that could be removed without destroying or materially injuring the saw or the realty upon which it was annexed was part of the realty because the school district intended to make it part of its realty, and the negligence claim

brought against the district by a student fell within real property exception to governmental immunity as the saw was permanently hardwired through the building, bolted to ground, and it was never removed from the shop classroom.).

With respect to the intentional tort claims against the Mayor, Chief of Police and Borough Council Member, Section 8550 of the Judicial Code provides, in pertinent part:

In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, ... actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 Pa.C.S. § 8550. As the instant intentional tort claims relate to the intentional conduct of the named parties, the instant claims fall within the exception provided for in Section 8550 of the Judicial Code. *See, e.g., Kuzel v. Krause*, 658 A.2d 856 (Pa.Cmwlth.1995) ("[F]or purposes of the Tort Claims Act, 'willful misconduct' is synonymous with the term 'intentional tort'. *King v. Breach*, [115 Pa. Cmwlth. 355, 540 A.2d 976, 981 (1988)].") (footnote omitted).